305 So.2d 777 (1974)
Sam SPECTOR, Petitioner,
v.
Dorothy GLISSON, Secretary of State, State of Florida, Respondent.
Arthur J. England, Jr., Intervenor.
No. 45893.
Supreme Court of Florida.
December 4, 1974.
Rehearing Denied January 17, 1975.
*778 Fredric G. Levin and D.L. Middlebrooks of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, P.A., Pensacola, for petitioner.
*779 Robert L. Shevin, Atty. Gen., and Baya M. Harrison, III, and David M. Hudson, Asst. Attys. Gen., for respondent.
Talbot D'Alemberte and Joseph P. Klock, Jr. of McCarthy, Steel, Hector & Davis, Miami, for Arthur J. England, Jr., intervenor.
Chesterfield Smith of Holland & Knight, Lakeland, for amicus curiae.
James A. Urban, Orlando, and Marshall R. Cassedy, Executive Director, The Florida Bar, Tallahassee, for The Florida Bar, amicus curiae.
DEKLE, Justice.
This cause reaches us by original petition for writ of mandamus to compel Respondent Secretary of State to accept the qualifying papers and fee of petitioner as a candidate for Justice of the Supreme Court of Florida, duly tendered during the designated statutory qualification period for candidates in the primaries and judicial nonpartisan election set for September 10, 1974. Intervenor made a similar tender for the same office within the same qualifying period and joins in this cause on the same basis and for the same relief sought by petitioner. We consider the two together.
The able and respected Secretary declined to accept the tendered qualification papers and fees upon the asserted ground that there was no vacancy for the office in question which was subject to an election at this time. Whether there is a vacancy to be filled by such election is the question before us, arising by virtue of the tendered resignation of a present Justice on this Court, the Honorable Richard W. Ervin, who reaches the mandatory retirement age of 70 on January 26, 1975 (not having been "grandfathered in") under the provision compelling such retirement in Fla. Const. Art. V, § 8.
A thorough search of the Florida Constitution reveals that ONLY in general Art. X, § 3, new in the 1968 Constitution, is there a definition of when a vacancy occurs, that section providing that a vacancy in office "shall occur" upon inter alia "resignation." Nowhere else therein is a vacancy in office defined; the other related provisions, including the specific one as to judges, state how and when it is to be filled, but not when it OCCURS. The 1885 Constitution in Art. IV, § 7, authorized the Governor to fill a vacancy "[W]hen any office, from any cause, shall become vacant... ." Now, however, the current 1968 constitutional provision controls and also takes precedence over statutes such as Fla. Stat. § 114.01 providing that an office shall be "deemed vacant" in cases there enumerated, one being "resignation." The provisions of Ch. 100 with regard to the filling of vacancies are supplementary only to the controlling constitutional requirement. Thus, absent a specific provision in the 1968 Constitution as to judges (as there is in Art. V, §§ 10 and 11 regarding the manner of filling the vacancy) the general provision must apply, that a vacancy "shall occur" upon "resignation".
The Attorney General's opinion[1] relied upon by respondent in rejecting applications for the vacancy in question, hinged in large measure upon an assertion that a resigning judge cannot make his resignation effective at a future date, so that there is no "vacancy" until the effective date of the resignation, citing In re Advisory Opinion, 117 Fla. 773, 158 So. 441 (1934), and like cases. This opinion, like the others cited with it, was long before new Art. V making specific provision for filling vacancies, as above discussed, but interestingly enough the decision went on to hold that the then power of appointment under different language (Art. IV, § 7, Fla. Const. of 1885) did become operative at the time of the resignation, "to be[come] effective *780 the day the resignation takes effect." Thus the petitioner's cited precedent is really support for the present holding that an effective resignation does create a present vacancy to be filled, but now by election by virtue of the new Art. V which applies.
The fact that a vacancy has been created, albeit to take effect in futuro, is supported by and is the only conclusion which is consistent with the prior holdings of this Court in In re Advisory Opinion, supra, and Tappy v. State, 82 So.2d 161 (Fla. 1955), which followed the general rule that "the appointment [is] to take effect when the resignation becomes operative."[2]
In Gray v. Bryant, 125 So.2d 846, 860 (Fla. 1960), this Court was concerned with the Governor's power of appointment with respect to newly created circuit court judgeships. We said there:
"... if the incumbent governor fills the offices by appointment they will not thereafter be vacant in the sense that they may be filled by executive appointment, but they will be vacant in the sense that under the provisions of Section 7, Article XVIII, they are subject to being filled by the people at the next general election."
It is also argued that a tender of resignation in futuro could easily be withdrawn. There is a division of authority on this subject, dependent upon the actual or particular facts involved. See 63 Am.Jur.2d Public Officers & Employees, § 166 (p. 730). Sub judice, however, Justice Ervin's resignation of Feb. 1974 was explicitly made unconditional by him and left no way for withdrawal thereof; thus, it became as fixed as if it were a present and definite date to leave office, very similar to the situation existing under our resign-to-run law, in which there is a known termination date of the office and an intervening election for selection of a successor.[3] Incidentally, the earlier question in the present controversy as to the Governor's "acceptance" of such a resignation was rendered moot by the fact, now conceded, that the Governor subsequently decided to and did accept the resignation, which may not have been controlling in any event.
Respondent's concern that this resignation might be withdrawn prior to its effective date and thus frustrate the constitutional process for a replacement seems more imagined than real. It would be hard to believe that a resignation of such great import by a Justice of the Florida Supreme Court would have been capriciously submitted and so tenuous in its finality that it would be subject to withdrawal; in any event, the resigning Justice by his letter left no doubt whatever as to finality and left no way out for any withdrawal of the tendered resignation, stating explicitly that his resignation was unconditional (a clear estoppel) as of midnight, January 6, 1975, so that his vacancy occurring on January 7, 1975, could be "filled by the person who will be elected in the 1974 judicial election." Furthermore, this particular resignation is also made in the context of a mandatory retirement in which such Justice is compelled by constitutional provision to retire in any event a few days beyond the date named as his mandatory termination of office, to-wit, January 26, 1975. Relinquishment of 20 days of the Justice's tenure to accommodate the electorate with the privilege of electing his successor by making the resignation effective on January 6, 1975, at midnight (the time immediately before a successor normally assumes office on the following first Tuesday after the first Monday of that year pursuant to election) shows a clear and fixed intent as to the resignation date and can hardly be considered uncertain and conditional. The significance of such magnanimous action and its adaptation to the preferred elective process should be gratefully acknowledged and not cavalierly discounted as merely conditional.

*781 "It has been said that the only excuse for the appointment of any officer made elective under the law is founded on the emergency of the public business and that when an elective office is made vacant the policy of the law is to give the people a chance to fill it as soon as possible." 63 Am.Jur.2d, Public Officers & Employees, § 128, p. 708, citing Patterson v. Burns (DC Hawaii), 327 F. Supp. 745; Todd v. Johnson, 99 Ky. 548, 36 S.W. 987; State ex rel. Laurer [Lanier] v. Hall, 74 N.D. 426, 23 N.W.2d 44.
"The law may require or permit vacancies in certain public offices to be filled by election, particularly where the vacancy occurs within a certain specified time before the election." 63 Am.Jur.2d, Public Officers & Employees, § 128, p. 708, citing State ex rel. Crow v. Hostella, 137 Mo. 639, 39 S.W. 270 and Riter [Reiter] v. State, 51 Ohio St. 74, 36 N.E. 943. (emphasis ours)
By his letter of February 19, 1974, Justice Ervin chose to make his resignation effective coincident with the date for taking office by all elected officials on the first Tuesday after the first Monday in January, 1975, thereby undertaking to accommodate the election of a successor by the traditional method of an election which would intervene in September 1974.
Respondent cites the Governor's power of appointment to judicial office in § 11 of Art. V, the judicial article adopted effective Jan. 1, 1973, as solely controlling, and so, rendering inapplicable to the filling of a judicial vacancy, our constitution's general article with respect to elections in § 5 of Art. VI which provides as follows:
"Section 5. General and special elections.  A general election shall be held in each county on the first Tuesday after the first Monday in November of each even-numbered year to choose a successor to each elective state and county officer whose term will expire before the next general election and, except as provided herein, to fill each vacancy in elective office for the unexpired portion of the term. Special elections and referenda shall be held as provided by law."
Even were this position correct, it overlooks the similar, specific elective provision of Art. V itself in the preceding § 10, providing initially for election of all justices and judges in saying:
"Section 10. Election and Terms. 
"(a) Election.  All justices and judges shall be elected by vote of the qualified electors within the territorial jurisdiction of their respective courts."
This then  the provision for election of judges  is the prime and basic provision and precept of Art. V, just as is Art. VI regarding elections generally. The subsequent provision for filling vacancies is subordinate and supplementary thereto. This view is consistent with the traditional treatment accorded to the elective process in this free nation of, by and for the people.
We have historically since the earliest days of our statehood resolved as the public policy of this State that interpretations of the constitution, absent clear provision otherwise, should always be resolved in favor of retention in the people of the power and opportunity to select officials of the people's choice, and that vacancies in elective offices should be filled by the people at the earliest practical date.[4]
Noteworthy is the language of the early Weeks v. Gamble, 13 Fla. 9 (1870), opinion on this point, in holding that the Lt. Governor there involved was to be elected by the people:
"They are the power to which is confided the right of selection by that instrument, *782 and any construction of the Constitution which restricts by implication the right to exercise the elective franchise in the selection of this officer, and extends executive power in that direction, is inconsistent with the intent and purpose of the framers of the Constitution in creating this office. Their view plainly expressed is that its incumbent should be the choice of the people... ."
This same rule was recognized in Klein v. Schulz, 87 So.2d 406 (Fla. 1956), although the result there was controlled by the express provision of the statute that the incumbent should complete his term.
We feel that it necessarily follows from this consistent view and steadfast public policy of this State as expressed above, that if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date. Thus the elective process retains that primacy which has historically been accorded to it consistent with the retention of all powers in the people, either directly or through their elected representatives in their Legislature, which are not delegated, and also consistent with the priority of the elective process over appointive powers except where explicitly otherwise provided. We thereby continue the basic premise of our democratic form of government, that it is a "government of the people, by the people and for the people."
In thoroughly examining respondent's assertion of the exclusiveness of appointive authority in new § 11, Art. V, we go back and examine the Art. V provisions which it succeeded, §§ 14 and 15 of old Art. V adopted in 1956 and applicable until the 1973 new Art. V. There the provision for the filling of vacancies by appointment extended to the entire remainder of an unexpired term of the vacancy occurring, for instance, one created by a retiring judge. Under § 11(a) of the 1973 Art. V, the Governor's power to fill such vacancies has now been reduced to extend only to "a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election," and not for the total unexpired term of the judge vacating the office, the subsequent term to be filled by the next reasonably available election. Thus we see that the appointive power has been reduced or limited from what it was, rather than being made greater or paramount, as respondent argues. Such provision is consistent with the paramount position historically given to the elective process, as discussed above. This new, more restrictive language of new Art. V points up the subsidiary position of the appointive power to that of election by the people by restricting the appointment to the earliest possible time that the people might speak. Sub judice an opportunity is immediately available for the voice of the people to be heard in the intervening elections which can now be employed to exercise the elective process without a forced intervening appointment until another election occurs 2 years hence for the subsequent, remaining 2 years of the term of Justice Ervin from which he retires, which latter course would be an illogical one to follow in light of all of the opinions and expressions of this Court over the years on the priority of the elective process.
It is appropriate to note also that as recently as the last legislative session of 1974, the Legislature was strongly urged by The Florida Bar and others to adopt a merit selection of judges of some sort different from that of popular election, and such proposal which would have changed the present elective process was clearly rejected by that Legislature.
The appointive power has its restrictions, as in the instance of our "resign to run" law[5] which makes express provision *783 for an interim choice of a successor by election to be effective on the first Tuesday after the first Monday in January of the year following such election. The same application of the elective process is routinely applied in respect to incumbent judges who choose not to stand for reelection (and is being exercised in choices of successor judges in this same September election without being questioned). Their successors are perennially selected at the election preceding the end of that term. We have a situation not too different in the present instance where the time that Justice Ervin will serve will be ending by virtue of his unconditional resignation as of the appropriate first Tuesday in January of 1975 and it is perfectly logical and proper that his successor be elected in the intervening election, as Justice Ervin arranged his affairs to permit. Such intervening election should be utilized to choose the incumbent's successor in situations as here where the vacancy must mandatorily occur and it is shown reasonably in advance of an intervening primary or general election, that the provision for compulsory retirement in our constitution will require a judge to retire by virtue of attaining age 70 (where he is not grandfathered in). Such result is demanded by the terms of the constitution; it affords the people a chance to speak, as their constitution has dictated.
Use of an available election also serves the worthy purpose of combining and restricting the holding of so many elections which can discourage voters to exercise their most precious right of franchise. We should not adopt a view that would delay the people's choice, merely to allow a gubernatorial appointment for a short term and then another election.
It is clear that § 11(a) of new Art. V was provided in order to fill by prompt appointment those vacancies which occur at times and in situations where there is a need for someone to fill an interim judgeship so that the business of the courts can continue and will not suffer by lack of an incumbent judge, but only in those instances where the elective process is not available. Section 11(a) does not contemplate a strained application which would give priority to the appointive power over the paramount elective process when there is a known vacancy to occur in conjunction with and reasonably before a judicial election; the elective machinery should be allowed to function to provide the successor.
The nominating commission process in § 11 of Art. V is really a restraint upon the Governor  not a new process for removing from the people their traditional right to elect their judges as provided in the basic, preceding § 10 of Art. V. One of the principal purposes behind the provision for a nominating commission in the appointive process was  not to replace the elective process  but to place the restraint upon the "pork barrel" procedure of purely political appointments without an overriding consideration of qualification and ability. It was sometimes facetiously said in former years that the best qualification to become a judge was to be a friend of the Governor! The purpose of such nominating commission, then, was to eliminate that kind of selection which some people referred to as "picking a judge merely because he was a friend or political supporter of the Governor" thereby providing this desirable restraint upon such appointment and assuring a "merit selection" of judicial officers.
We must bear in mind that in all events the Governor's judicial appointments are only interim appointments, in effect "stop gap" measures until an election can be held. It is not, therefore, a measure to be applied in those instances where the electorate has a reasonable, available opportunity to express its choice. We do not in any way disparage, nor seek to diminish, the full application and use of the merit system of selection of judges which should still apply whenever there is no intervening election and when such circumstances as *784 are present here are known in advance, and where the resignation is made unconditional in all good faith, as is clear in this instance.
In the circumstances sub judice where the resignation is clearly unconditional and fixed, with an intervening election making the elective process reasonably available, a vacancy in the office in question was made clear and certain to occur on January 6, 1975, which should be filled by the intervening available elective machinery. To hold otherwise would frustrate the plain requirements of our constitution and the public policy of this State for over 100 years. Here the judicial election in September is available subsequent to the resignation letter of February 1974, and there is no emergency or public business requiring an appointment, since the present justice's tenure would continue until that effective date of January 6, 1975, under his unconditional resignation. As to the argument that no vacancy could exist until the actual, physical departure from the bench on January 6, it would seem that to take this strained view as to a known vacancy in order to provide for Executive appointment would almost be creating an artificial appointment in violation of the constitutionally required elective process. This is of course not compatible with the policy of the law and the public policy of this State which gives to the people the right to elect their public officials including judges at the earliest opportunity.
Interim appointments need only be made when there is no earlier, reasonably intervening elective process available. As between the appointive power on the one hand and the power of the people to elect on the other, the policy of the law is to afford the people priority, if reasonably possible, and of course here it was very logically available. If such policy is to be modified, let the people speak.
Peremptory writ of mandamus is proper as earlier held in the Court's judgment on Friday, August 2, 1974, and the terms thereof have been fulfilled in compliance with the writ.
The intervenor has raised the question of the length of the term of the vacancy. Such question was neither presented, briefed nor argued and the reference thereto in the pre-opinion judgment was obiter dicta only. Accordingly, such reference is deleted and decision thereon is deferred until such question shall be properly presented to a court of appropriate jurisdiction in a separate proceeding, then properly briefed with oral argument. By way of caveat, we feel impelled to say that any commission issued in pursuance of such election is subject to any adjustment as to tenure as such final decision thereon may dictate.
It is so ordered.
ADKINS, C.J., ROBERTS, McCAIN and DEKLE, JJ., concur.
BOYD, J., dissents with opinion.
POPPER, Circuit Court Judge, concurs in part and dissents in part with opinion.
OVERTON, J., dissents.
BOYD, J. (dissenting).
I respectfully dissent.
In this case, the Court should follow the expressed will of the people. I have searched in vain for a constitutional provision which would permit the vacancy created by Mr. Justice Richard Ervin's resignation to be filled by popular vote. There is simply no such language in the Florida Constitution.
The people spoke on this issue in 1972. They adopted Section 11 of Article V of the Florida Constitution which provides as follows:
"Section 11. Vacancies. 
"(a) The governor shall fill each vacancy in judicial office by appointing for a *785 term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election, one of not fewer than three persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term. The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor must make the appointment within sixty days after the nominations have been certified to him.
"(b) There shall be a separate judicial nominating commission as provided by general law for the supreme court, each district court of appeal, and each judicial circuit for all trial courts within the circuit."
The record shows the letter of resignation will make Justice Ervin's resignation effective on January 6, 1975. Clearly, there will be no vacancy until that time. The above constitutional provision will require the Governor to appoint a successor to Justice Ervin who would serve until the 1976 Judicial election.
If the people should find Section 11 of Article V mentioned above unacceptable, the Constitution should be changed by the people and not by this Court.
I regret that I must respectfully dissent to the majority opinion.
POPPER, Circuit Court Judge (concurring in part and dissenting in part):
I concur in that part of the opinion calling for an election to fill the vacancy, sub judice, but dissent from that part of the opinion which defers the question of tenure, it being my opinion that the question of tenure can and should be disposed of in this proceeding.

ORDER DENYING REHEARING
The opinion having been revised, the petition for rehearing is visited to the revised opinion. The election has been held and the successful candidate has taken office. As stated in our formal opinion, the issue of the length of the term of office was not initially argued, briefed, or properly before the Court for determination. This is no longer an adversary proceeding, and it is not now a proper subject for determination on the status of this record.
Petition for rehearing is denied.
ADKINS, C.J., and ROBERTS, McCAIN, DEKLE and OVERTON, JJ., concur.
BOYD, J. and POPPER, Circuit Court Judge, dissent.
NOTES
[1] AGO 074-175  June 20, 1974.
[2] Mechem, Public Offices and Officers, § 133 (pp. 66, 67).
[3] In re Advisory Opinion, 239 So.2d 247 (Fla. 1970).
[4] See Weeks v. Gamble, 13 Fla. 9 (1870); Klein v. Schulz, 87 So.2d 406 (Fla. 1956); State ex rel. Ayres v. Gray, 69 So.2d 187 (Fla. 1953); State ex rel. West v. Gray, 70 So.2d 471 (Fla. 1954); Ervin v. Collins, 85 So.2d 852 (Fla. 1956).
[5] F.S. § 99.012; In re Advisory Opinion, 239 So.2d 247 (Fla. 1970).