424 So.2d 10 (1982)
JUDICIAL NOMINATING COMMISSION, NINTH CIRCUIT, Petitioner,
v.
Robert GRAHAM, As Governor of the State of Florida, and George Firestone, As Secretary of State of the State of Florida, Respondents.
No. 62513.
Supreme Court of Florida.
Order August 31, 1982.
Opinion December 16, 1982.
Gregory A. Presnell, as Chairman of and as Counsel for the Ninth Circuit Judicial Nominating Com'n, of Akerman, Senterfitt & Eidson, Orlando, for petitioner.
Betty J. Steffens, Gen. Counsel to the Governor and Arthur R. Wiedinger, Jr., Asst. Gen. Counsel, Tallahassee, and Jim Smith, Atty. Gen., Walter M. Meginniss, Asst. Atty. Gen. and James V. Antista, Legal Counsel for Dept. of State, Tallahassee, for respondents.
Upon consideration of the Petition for Writ of Mandamus and for Injunctive Relief, it is ordered by the Court that said petition be and the same is hereby denied. A full opinion will follow.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
BOYD, J., dissents.
OVERTON, Justice.
The Ninth Circuit Judicial Nominating Commission seeks a writ of mandamus directing the Honorable Robert Graham, Governor of the State of Florida, to use the merit selection process to fill judicial vacancies which occurred in August, 1982. Granting the writ would necessitate a vacation of the governor's order calling a special election to fill those vacancies. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.
The Court considered this cause as an emergency matter, heard oral argument, and on August 31, 1982, issued an order denying the writ. In our order we advised that our reasons for denial would be expressed in a subsequent written opinion.
In considering the Judicial Nominating Commission's petition for mandamus, we found that the Commission had standing to seek the writ, but determined that the petition should be denied on its merits. We conclude that the constitution mandates an election when there is sufficient time to afford the electorate an opportunity to fill a judicial vacancy.
*11 The facts are uncontroverted. The Honorable Thomas E. Kirkland, Circuit Judge for the Ninth Judicial Circuit, died on August 6, 1982, and the Honorable Richard B. Keating, Circuit Judge for the Ninth Judicial Circuit, died on August 16, 1982. Also on August 16, 1982, the Honorable James Stroker, County Judge for Orange County, created another vacancy by resigning from office effective January 1, 1983, to run for the vacancy in the office of circuit judge created by Judge Kirkland's death. Governor Graham ordered special elections to fill these vacancies. October 5, 1982, the date of the second primary, was set as the date for the first nonpartisan special judicial election, and November 2, 1982, the date of the general election, was set for the second or runoff nonpartisan judicial election. September 3, 1982, was set as the last day for qualifying for the vacancy created by Judge Kirkland's death, and September 7, 1982, was set as the last day for qualifying for the vacancies created by Judge Keating's death and Judge Stroker's resignation.
The governor, in his response to this petition, challenges the standing of the Ninth Circuit Judicial Nominating Commission to bring this action. A nominating commission is a constitutionally established body, mandated by the constitution to submit the nominations of three persons to the governor within thirty days following a judicial vacancy. See art. V, § 11, Fla. Const. We have expressly held that the nominating commissions are part of the executive branch. In so holding, however, we recognized the constitutional independence of the commissions and the requirement that the fulfillment of the commissions' duty be free of the governor's influence. To effect this constitutional intent, we held that the governor may not impose rules of procedure upon the commissions because to do so might destroy the commissions' "constitutional independence." See In re Advisory Opinion to the Governor, 276 So.2d 25, 30 (Fla. 1973). In that case we concluded that "[w]hile the function of the commissions is inherently executive in nature, the mandate for the commissions comes from the people and the Constitution, not from the Legislature, the Governor, or the Courts." Id. at 30. We hold that since the nominating commissions are constitutionally created, with independent duties concerning the filling of judicial vacancies, a commission has standing to seek a writ of mandamus to allow the commission to perform its nominating function.
On the merits, the question to be determined requires a construction of article V, sections 11(b) and (c), which provide:
(b) The governor shall fill each vacancy on a circuit court or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election, one of not fewer than three persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term.
(c) The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to him.
(Emphasis added.)
These constitutional provisions provide for the use of the merit selection process, but only for a term which ends in January of the year following the next primary and general election. The purpose underlying article V, section 11, is to provide for the election process at the next available primary and general election. In Spector v. Glisson, 305 So.2d 777 (Fla. 1974), we held that if a judicial vacancy is known reasonably in advance of an intervening primary and general election, the vacancy must be filled by election. The holding in Glisson was predicated upon the fact that the constitutional provision was intended to have the election process select members of the judiciary if the electorate had adequate knowledge that a vacancy would occur and that candidates could qualify and run during *12 the regularly scheduled primary and general election process. In In re Advisory Opinion to the Governor, Request of September 6, 1974, 301 So.2d 4 (Fla. 1974), we advised the governor that he need not call a special election and should utilize the merit selection process when knowledge of a vacancy occurred at or after the time of the first primary election. This conclusion was based on the fact that the timing of the vacancy made it impossible to practically afford the electorate an opportunity to fill the vacancy in the 1974 elections. In that instance, we held that the governor could appoint for a term ending in January, 1977, meaning that the office would be subject to the 1976 election process.
In summary, if the vacancy is known in sufficient time to schedule a special election during the already scheduled primary and general election dates, then a special election should be held. On the other hand, if an irrevocable communication of an impending vacancy is presented to the governor at the time of or after the first primary, then we have held there is insufficient time to use the primary and general election process during that year and the governor is authorized to use the merit selection process for a term ending in January following the general election two years later.
We recognize that this interpretation of article V, section 11, has the practical effect of denying a community a needed judicial position for as long as six months when vacancies can only be filled by the election process. Few, if any, individuals would proceed through the nomination process because of the limited term they would serve, unless they had qualified to run for the vacancy. The end result is that vacancies occurring between July 1 and September 1 of an election year are not ordinarily filled until January 1. We cannot rewrite the constitution, and it is clear that the framers of the constitution intended the election process to be used except "when there is no earlier, reasonably intervening election process available." 305 So.2d at 784.
To avoid this temporary loss of judicial manpower, as illustrated in the instant case, two suggested remedies were presented by the 1978 Constitutional Revision Commission. The first provided that the merit-selection, merit-retention process now used for appointment of appellate judges would also be used for appointment of trial judges. The second retained the election process for trial judges but provided for the filling of trial court vacancies in the same manner as appellate court vacancies, with the appointment being for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment. Adding the phrase "occurring at least one year after the date of appointment" would have eliminated the problem that the Ninth Circuit is experiencing in this case.[*]
For the reasons expressed, we find that the governor properly called for special elections for each of the judicial vacancies. The petition for mandamus has been previously denied.
It is so ordered.
ALDERMAN, C.J., and McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in result only.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
Article V, section 11(b) of the Florida Constitution clearly provides that vacancies in the offices of circuit and county judge shall be filled through appointment by the governor. The Court today recognizes an exception to this clear constitutional provision. *13 This misinterpretation will give rise to serious and unnecessary complications for the judiciary. Not only is the governor constitutionally required to fill the vacancies by appointment, he also lacks any authority to call special elections to fill them. I therefore dissent.
Article V, section 11(b) and (c) provides:
(b) The governor shall fill each vacancy on a circuit court or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election, one of not fewer than three persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term.
(c) The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to him.
Article V, section 11 reflects a concern for the continuous and orderly functioning of the judiciary. The time limits set for the making of nominations and appointments emphasize the framers' intent that interruptions due to vacancies be of the minimum possible duration. In keeping with this intent, this Court has allowed vacancies to be filled by election rather than by appointment only when "the effective date of the vacancy coincided with the commencement of the terms of other judicial officers elected during the same elective process." In re Advisory Opinion to the Governor, 301 So.2d 4, 7 (Fla. 1974). See Spector v. Glisson, 305 So.2d 777 (Fla. 1974).
Here, of course, the vacancies are not scheduled to occur at the time of the commencement of the terms of other judicial officers and the above criterion is not met. The vacancies have already occurred and should have been filled as quickly as possible by the appointment process.
The effect of the Court's decision today is to postpone the filling of the vacancies until January of 1983, by which time the judicial offices in question will have been vacant for five months. As the majority opinion acknowledges, even longer vacancies are possible under the Court's interpretation.
The majority appears to be operating under the mistaken assumption that appointments made now to fill the vacancies would be to terms lasting only until January, 1983. The constitution provides that appointive terms will end on "the first Tuesday after the first Monday in January of the year following the next primary and general election." Art. V, § 11(b), Fla. Const. The Court believes that "the next primary and general election" means the current elections of October and November, 1982. I believe that the language "next primary and general election" refers to the next election for which individuals can qualify as candidates in the normal course of events. Under my interpretation the next primary and general election will be the elections occurring in the fall of 1984. The constitutional language should not be construed to mean the fall, 1982 elections since at the time this case arose it was already too late for candidates to qualify for the current elections. Therefore I conclude that the appointments which can and should be made now will be for terms ending in January of 1985.
My construction of the words "next primary and general election" better serves the cause of continuity and avoidance of disruption in the judiciary. The appointment process fills vacancies more quickly and avoids the need for calling special elections. Construing the words to refer to the next general election after the forthcoming January ensures the availability of a regular election to fill the office after the term of the interim appointed judge.
Although the constitution provides that an "election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term," art. V, § 11(b), it does not contemplate that the election be a special election. The legislature *14 has the authority to determine how elections of judicial officers are to be conducted. In re Advisory Opinion to the Governor, 301 So.2d 4 (Fla. 1974). Statutory provisions pertaining to judicial elections are codified in chapter 105, Florida Statutes (1981). There is no provision in that chapter authorizing special elections of judges.
Special elections are provided for only by section 100.101, Florida Statutes (1981), which provides:
A special election or special primary election shall be held in the following cases:
(1) If no person has been elected at a general election to fill an office which was required to be filled by election at such general election.
(2) If a vacancy occurs in the office of state senator or member of the House of Representatives.
(3) If it shall be necessary to elect presidential electors, by reason of the offices of President and Vice President both having become vacant.
(4) If a vacancy occurs in the office of member of the House of Representatives of Congress from Florida.
(5) If a vacancy occurs in nomination.
It is clear that this statute does not envision special elections for judges. Section 100.101 should be considered as in pari materia with section 100.141, which the governor and the secretary of state assert grants them the authority to hold special elections in this case. Section 100.141 only applies when a special election is required in order to fill a vacancy in elective office. Since there is no requirement, either in the constitution or in the statutes, that vacancies in judicial offices be filled by special election, section 100.141 is inapplicable.
The majority's decision will have the effect of requiring special elections whenever judicial vacancies occur between the last day of the qualifying period for the regular elections and the date of the first primary. This holding may result in substantial and unnecessary public expenses in connection with special elections. For example, if a vacancy occurs one day before the first primary, under the majority's decision, a special election would be required. Because sufficient time would have to be allowed for a qualifying period, it is conceivable that, unlike in the present case, it would be impossible to hold the special election on the same day as the second primary. The special election would have to be held on some other day causing additional expenses. Then there will be questions as to who will bear the additional expenses. The state is required to reimburse the counties for the expenses of special elections held pursuant to section 100.101. § 100.102, Fla. Stat. (1981). The statutes do not specify who is to bear the expenses of holding special elections of judges. I do not view this as an oversight, but rather as further evidence that there is no statutory or constitutional authority for special elections of judges.
Since the vacancies in this case occurred after the qualifying period for the current elections ended, I believe they should be filled by gubernatorial appointment in accordance with the clear language of article V, section 11(b), Florida Constitution. I therefore dissent to the majority decision requiring the vacancies to be filled by special election.
NOTES
[*] Proposal, Constitutional Revision Commission:

SECTION 11. Vacancies. 
(a) The governor shall fill each vacancy on the supreme court, on a district court of appeal, on a circuit court, or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment, one of not fewer than three persons nominated by the appropriate judicial nominating commission.