DAVIS, J.
Appellant, Stephen P. Pincket, appeals the trial court’s order denying his emergency petition for writ of mandamus, which sought to have the trial court order Secretary of State Katherine Harris to revoke her disqualification of Pincket as a candidate for a vacant Tenth Judicial Circuit judicial seat. Because we conclude that the trial court correctly interpreted the constitutional provisions as applied to *285 the particular facts of this case and properly denied relief, we affirm.
Judge Robert A. Young was a circuit judge in the Tenth Judicial Circuit with a term expiring on January 2, 2001. In April 2000, the Secretary of State caused a notice of general election to be published in the Lakeland Ledger, announcing the November 2000 elections for various offices, including Judge Young’s seat. By letter dated June 19, 2000, Judge Young announced that he intended to resign, effective midnight, June 20. Governor Bush formally accepted the resignation on June 29, and at approximately the same time, the Governor’s office forwarded a letter to the judicial nominating commission (JNC) for the Tenth Judicial Circuit, requesting that it convene for the purpose of submitting nominees to fill the vacancy caused by Judge Young’s resignation. In turn, the JNC requested the Attorney General’s opinion on whether the vacancy should be filled by holding an election or by gubernatorial appointment. On July 6, 2000, the Attorney General issued opinion 00^41, opining that in light of article V, section 11(b) of the Florida Constitution,[1] the vacancy must be filled by appointment, with the term to end in January 2003.
On July 17, Pincket filed qualifying papers for Judge Young’s former seat on the Tenth Judicial Circuit bench, group 16, with the Division of Elections. The record indicates that, according to the Secretary of State, the Division of Elections knew at this time that the vacancy was to be filled by appointment, but an employee who was unaware of this fact accepted Pincket’s papers and qualified him as a candidate. Realizing its error, the Secretary of State’s office informed Pincket the following day
Pincket filed an “emergency petition for writ of mandamus, or for writ of prohibition, or for declaratory and injunctive relief,” naming the Secretary of State as the sole respondent. Pincket argued that the Secretary of State had no authority to disqualify him as a candidate once he had been qualified, or that, if such authority exists, no proper grounds for its exercise were present in this situation. Pincket sought to have the trial court order that the Secretary of State revoke her disqualification of him and return his qualification papers and fee and reinstate him as a fully qualified candidate, and that the trial court require that the election be held. Pincket sought, in the alternative, to have the trial court restrain the Governor’s office from making an appointment to fill the vacant seat.
The Secretary of State responded that she must be deemed to have the authority to return qualifying papers for an election that will not occur, and that the provisions of article. V, section 11(b) called for the vacancy to be filled by appointment rather than by election. Governor Jeb Bush was permitted to intervene and joined in the Secretary of State’s memorandum in support of her response. Following a hearing, the trial court issued an order denying Pincket’s request for relief and adopting the reasoning expressed in the Attorney General’s opinion 00-41, rendered July 6, 2000. The trial court agreed with the Attorney General’s opinion that “ ‘In light of the language of [ajrticle V, [sjection 11, *286 [of the] Florida Constitution, the resignation of a circuit court judge under these circumstances creates a vacancy which must be filled by appointment by the Governor for a term of office to end in January 2003.’ ”
Underlying Pincket’s challenge of his disqualification by the Secretary of State is the issue of whether the Florida Constitution requires Judge Young’s former seat to be filled via the election process or by gubernatorial appointment. Pineket argues that Spector v. Glisson, 305 So.2d 777 (Fla.1974), compels the conclusion that the vacant seat must be filled by election rather than appointment. Although we recognize the broad language used by the Spec-tor court, the court in In re Advisory Opinion to the Governor, 600 So.2d 460 (Fla.1992), and the 1996 amendment to article Y, section 11(b), has limited Spector to its facts. In Spector, the Secretary of State, relying upon an attorney general opinion, refused to accept the qualifying papers and fees of two prospective candidates for the seat of retiring Florida Supreme Court Justice Richard W. Ervin, because the attorney general had concluded that no vacancy yet existed due to Justice Ervin’s resignation not becoming effective until a later date. The Spector court examined the meaning of the term “vacancy” in the Florida Constitution and concluded that a vacancy, albeit a future one, was created once Justice Ervin, in a letter dated February 1974, submitted notice of his intent to resign effective midnight, January 26, 1975. See Spector, 305 So.2d at 780, 784. Thus determining that a vacancy had occurred by virtue of Justice Ervin’s submission of the resignation letter, the supreme court determined that the position should be filled through the election process rather than through the appointment process as set forth in article V, section 11(a) of the Florida Constitution. In support of its determination, the court explained:
[w]e have historically since the earliest days of our statehood resolved as the public policy of this State that interpretations of the constitution, absent clear provision otherwise, should always be resolved in favor of retention in the people of the power and opportunity to select officials of the people’s choice, and that vacancies in elective offices should be filled by the people at the earliest practical date.
Id. at 781 (emphasis added). The court stated that based upon this rationale as well as confirmed public policy, “that if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office.... ” Id. at 782. The court noted that article V, section 11(a) was newly created to provide for the prompt filling of vacancies when the elective process was unavailable. The court concluded that:
[i]nterim appointments need only be made when there is no earlier, reasonably intervening elective process available. As between the appointive power on the one hand and the power of the people to elect on the other, the policy of the law is to afford the people priority, if reasonably possible.... If such policy is to be modified, let the people speak.
Id. at 784 (emphasis added).
As explained in Spector, the judicial election in September was available subsequent to Justice Ervin’s resignation letter of February, and there was no emergency or public business requiring an immediate appointment since the Justice’s tenure would continue until January 6. See id. Thus, the court found that a vacancy was created and that such vacancy could be properly filled by the elective machinery in 1974.
Pineket argues that the sweeping language in Spector mandates that the vacant seat here must be filled by election. For example, the Spector court interpreted what was then article V, section 11(a) (now section 11(b)), as applying “only in those instances where the elective process is not *287 available.” Id. at 783. Further, the court explained that:
[s]ection 11(a) does not contemplate a strained application which would give priority to the appointive power over the paramount elective process when there is a known vacancy to occur in conjunction with and reasonably before a judicial election; the elective machinery should be allowed to function to provide the successor.

Id.

In In re Advisory Opinion to the Governor, however, the supreme court effectively limited the application of Spector to situations in which a judge resigns effective at a future date and no interim vacancy will exist. See In re Advisory Opinion to the Governor, 600 So.2d at 462. The supreme court advised the governor that, where a judge resigned effective August 1, 1992, but filling the vacant seat with an elected judge would mean that the office would remain vacant from August 1992 through January 1993, “because no unreasonable vacancy should exist, it is your [the governor’s] duty to appoint someone for the August 1, 1992 to January 5, 1993 time period if this can be accomplished.” Id. at 463. Thus, Spector, as limited by In re Advisory Opinion to the Governor, does not limit the governor’s power to fill an interim vacancy.
Pincket further argues that Judicial Nominating Commission, Ninth Circuit v. Graham, 424 So.2d 10 (Fla.1982), also requires that the vacant seat be filled by an elected individual rather than an appointed one. In Graham, the Ninth Circuit judicial nominating commission sought a writ of mandamus directing Florida Governor Robert Graham to appoint replacements to fill trial court judicial vacancies rather than fill the vacancies with elected judges. The Florida Supreme Court, citing Spec-tor, noted that it had held when “a judicial vacancy is known reasonably in advance of an intervening primary and general election, the vacancy must be filled by election.”[2] Graham, 424 So.2d at 11. The court construed the pre-1996 amendment version of article V, section 11(b) and concluded that section 11(b), as well as section 11(c), provided for the governor to appoint eligible candidates to fill the vacancies, “but only for a term which ends in January of the year following the next primary and general election.” Id. at 11. The court noted that this interpretation of article V, section 11, would have the practical effect of causing judicial vacancies to remain unfilled for an untenable time period because most individuals would not choose to be considered for a judicial appointment in which they would serve relatively briefly. See id. at 12. The court recognized that the likely result would be that vacancies occurring between July 1 and September 1 would not be filled until January 1. The court noted that the problem created by the “temporary loss of judicial manpower” would be eliminated with one of the suggested remedies as presented by the 1978 Constitutional Revision Commission. See id. at 12. The suggestion was to provide
for the filling of trial court vacancies in the same manner as appellate court vacancies, with the appointment being for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment. Adding the phrase “occurring at least one year after the date of appointment” would have eliminated the problem that the Ninth Circuit is experiencing in this ease.
Id. at 12.
The constitutional amendment at issue in this case was submitted to the electors *288 and approved at the general election in November 1996, after a Florida Article V Task Force was created in 1995 and the Task Force developed the model legislation to amend the constitution.
Hence, the suggestions recognized by the Graham court were incorporated into article V, section 11(b) by the people. While the amended article standing alone may not appear to provide the governor with the authority to appoint a qualified individual to fill a vacant circuit court seat when an election is scheduled within the foreseeable future, when read in conjunction with the Graham language discussing difficulties with appointing qualified individuals to serve relatively briefly on the circuit bench, and the attendant suggested constitutional amendment language, it is clear that the 1996 amendment was intended to provide the governor with authority to appoint qualified individuals to serve in the position of the former incumbent judge, when the vacancy occurs as it did in the present case. While Pincket urges this court to adopt the rationale contained within cases and materials pre-dating the 1996 amendment of article V, section 11(b), which appear to suggest that election should be favored over appointment, we conclude that the 1996 amendment supersedes these earlier cases and materials, and it is now the “dominant law of the subject matter.” Wilson v. Crews, 160 Fla. 169, 174, 34 So.2d 114, 117 (1948) (stating that “ ‘[wjhere there is a repug-nancy between a constitutional amendment and some provision in the original, which cannot be so construed as to have them both stand and leave to each a legitimate office to perform, the original must be deemed to have been repealed by the amendment’ ” (citation omitted)). The constitutional amendment strikes a proper balance between the concern for a minimum term of service for successor judges and the policy favoring elections. In the context of this case, the constitutional amendment permits the Governor to make a judicial appointment for the current vacancy in the Tenth Judicial Circuit.
Because Pincket has not met his burden of demonstrating that the Secretary of State violated Pincket’s clear legal right while also breaching the Secretary of State’s indisputable, ministerial, legal duty, we cannot conclude that the trial judge abused his discretion by denying Pincket’s petition. We therefore affirm.
AFFIRMED.
WOLF and VAN NORTWICK, JJ., CONCUR.

. Article V, section 11(b) was amended in 1996 to read:
The governor shall fill each vacancy on a circuit court or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than that he had been qualified in error, that there would be no election because the governor had determined to fill the vacancy by appointment, and’that his qualifying papers and fee would be returned. three persons nor more than six persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term.
(emphasis added to indicate 1996 amendment).

. However, the court in Graham further refined the holding in Spector by stating that:
if an irrevocable communication of an impending vacancy is presented to the governor at the time of or after the first primary, then we have held there is insufficient time to use the primary and general election process during that year and the governor is authorized to use the merit selection process for a term ending in January following the general election two years later.
Graham, 424 So.2d at 12.