PADOVANO, J.,
dissenting.
The majority has concluded that a judicial vacancy created by a resignation tendered before the qualifying period for a general election but with an effective date one day before the end of the judge’s term must be filled by a gubernatorial appointment. With respect for my colleagues in the majority, I believe that this decision is contrary to the applicable case law and the controlling provisions of the Florida Constitution. Moreover, I believe that the precedent the court has set here is one that will have a high potential for abuse. The. effect of the court’s decision is to bestow upon an individual judge the power *646 to block an election by resigning just short of the end of his or her term in office. I do not think this decision is required as a matter of -law, nor do I think that it is wise. For these reasons, I dissent.
The rationale of the majority’s decision is that an appointment is required because the resignation at issue was accepted before the start of the qualifying period. On this point, I believe that majority has misconstrued the requirements of Article X, section 3 and Article V, section 11(b) of the Florida Constitution. The fallacy of the majority’s reasoning is that it fails to account for the fact that the resignation was to take place at a distant point in the future. I acknowledge that the Governor would have had a right under these constitutional provisions to appoint Judge Moran’s successor had the resignation become effective immediately or even if it had been scheduled to take place several months after the date of the resignation letter, as it ordinarily the case. But the problem here is that Judge Moran continues to occupy the office even to this day. His resignation was to take effect approximately eight months after the date of his resignation letter. The qualifying period for the 2014 general election occurred in the interim, and the election itself will have taken place in the interim.
It is true that the existence of a vacancy as defined in Article X, section 3 could trigger the need for a gubernatorial appointment, but that is not necessarily the case if the vacancy is created by a resignation that is to take place in the future. The Supreme Court’s decision in Spector v. Glisson, 305 So.2d 777 (Fla.1974) serves as a good example. In that case, a justice who was ineligible to run for another term in office sent a letter of resignation to the governor prior to the start of the qualifying period for the next general election. The resignation was to take effect at midnight on the last day of the incumbent justice’s term. A lawyer attempted to qualify for election to the office during the qualifying period, but the secretary of state refused to accept his qualifying papers, concluding that the seat was to be filled by an appointment. The lawyer then filed a petition for writ of mandamus seeking to compel the secretary to accept his qualifying papers. The Supreme Court granted the petition and directed that the seat be filled by an election.
The resignation in the Spector case did not create a right on the part of the governor to fill the vacancy by an appointment, because there was an intervening qualifying period and an intervening general election. The Supreme Court made it clear that the appointment process is to be used only when necessary to fill a seat that will be unoccupied. As the court stated, “the only excuse for the appointment of any officer made elective under the law is founded on the emergency of the public business.” Id. at 781 (citations omitted). The court expanded on this theme by stating in no uncertain terms that there is a strong preference for elections in Florida:
We feel that it necessarily follows from this consistent view and steadfast public policy of this State as expressed above, that if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date. Thus the elective process retains that primacy which has historically been accorded to it consistent with the retention of all powers in the people, either directly or through their elected representatives in their Legislature, which are not delegated, and also consistent with the priority of the elective process over appointive powers except where explicitly otherwise pro *647 vided. We thereby continue the basic premise of our democratic form of government, that it is a ‘government of the people, by the people and for the people.’
Id. at 782. Because judges are elected in Florida and because the vacancy at issue could have been filled by a candidate elected by the people in a general election, the court concluded that the governor was not entitled to make an appointment.
The only difference between this case and the Spector case is that the effective date of the resignation in this case was one day before the end of the term and not on the last day. The question we should be asking ourselves is whether this is the kind of difference that should compel an exception to the rule in Spector, I think that it is not. In both cases, the judges communicated an intention not to run for another term. The fact that one of them planned to leave office a day early is not, in my view, a valid reason to reach a different result. Thus, I believe that the majority has misapplied the Spector decision by relying on a distinction without a difference.
The majority contends that the Spector decision is not controlling here because it is limited to situations in which there will be no actual vacancy in the office. However, I think it is incorrect to say that any actual vacancy, regardless of its duration, triggers an exception to the rule in Spec-tor. The cases the majority of this court relies on are all distinguishable in that they involve situations in which an appointment was necessary to avoid a substantial period in which the office would remain unoccupied.
For example, in Advisory Opinion to the Governor, 600 So.2d 460 (Fla.1992) the judge sent a letter to the governor in March resigning effective the following July. That case differs substantially from Spector and this case, in that the office would have remained unoccupied for five months, irrespective of the intervening election. The same is true of all of the other cases. See Advisory Opinion to the Governor re Sheriff & Judicial Vacancies Due to Resignations, 928 So.2d 1218 (Fla.2006) (the judge resigned in April effective the following May, thus leaving the office unoccupied for seven months, regardless of the scheduled election that year); Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation, 42 So.3d 795 (Fla.2010) (the resignation created an actual vacancy of seven months); Pincket v. Harris, 765 So.2d 284 (Fla. 1st DCA 2000) (the judge resigned on June 19th effective the next day, leaving an actual vacancy in the office for a period of six months).
The common feature of the cases is that they all involve situations in which the courts distinguished the holding in Spec-tor, for the purpose of solving a problem: to avoid a lengthy gap in judicial service. But there is no such problem in this case. Here, as in Spector, there is no reason why the seat could not be filled by an election. Judge Moran resigned before the start of the qualifying period for the 2014 general election, and the effective date of his resignation is after the date of the election itself. The rationale of the Spector decision, that elective offices should be filled by elections whenever that is possible, is as compelling in this case as it was forty years ago when the decision was made.
The majority has concluded that the duration of the actual vacancy is immaterial, but in my view that is incorrect. Although there are cases holding that an actual vacancy of six months requires an appointment, as I have pointed out, it does not follow from the principle established in these cases that an actual vacancy of one day requires an appointment. I am not aware of any case that stands for the proposition that any actual vacancy, no *648 matter how brief it may be, requires an appointment. And I am confident that there is no authority for the proposition that the rights of voters can be overcome by a manufactured vacancy like the one we have before us in this case.
The reason given by the majority for holding that the duration of the actual vacancy is immaterial is that the task of deciding whether the vacancy in a particular case is too long or too short would lead to arbitrary results. There is some merit to that point, but I think that judges are well-equipped to make decisions like those — one could argue that is precisely what we are here to do — and that there is a greater danger in following an inflexible rule, no matter how unfair the result may be, simply for the sake of following the rule. I think it would be far better to apply judgment and reason to resolve the issue on the facts presented in the case.
Finally, I fear that the precedent the court has set here, although well intended, will be abused by those who would manipulate the election process to suit their own political or philosophical objectives. Suppose, for example, that two judges in the same judicial circuit are retiring at the end of their respective terms in office. One of them likes the governor very much and the other strongly opposes the governor. The first judge could bestow the power of an appointment on the governor simply by resigning before the qualifying period but with an effective date the day before the last day of his or her term. In contrast, the second judge could block a gubernatorial appointment simply by notifying members of the local bar that he or she does not intend to stand for re-election. Both judges would have chosen not to seek another term in office, yet one of them would have made the choice appear as though it were resignation before the end of the term. I see no reason why the court should allow the election process to be circumvented in this way.
For these reasons, I respectfully dissent.