PARIENTE, J., dissenting.
I fully concur with Justice Quince's dissenting opinion, which proposes a reasonable solution to this constitutional conundrum that would prevent judges who favor merit retention in lieu of election from manipulating the system, ensure that judicial vacancies do not exist for an extended period of time, and is consistent with this Court's precedent in Spector v. Glisson , 305 So.2d 777 (Fla. 1974). See dissenting op. at 910-11 (Quince, J.). We should not condone this practice of judges announcing their resignation before the beginning of an election qualifying period but not resigning until days before the end of their term, which has occurred since 2016, regardless of whether they prefer merit selection over election. This Court should seize the opportunity to end this practice by holding, as Justice Quince explains, that the vacancy in this case should be filled by election. Thus, I disagree with the majority's decision to discharge.
In my view, the solution set forth in Justice Quince's dissent ensures that trial court vacancies are filled, wherever possible, by election. See dissenting op. at 913-14 (Quince, J.). This solution is consistent with my previous opinion in Pincket v. Detzner , No. 16-768, 2016 WL 3127704 (Fla. June 3, 2016), where I explained:
Although individual judges may prefer the merit selection system for all judges rather than contested elections, no individual judge should be able to circumvent the intent of the provisions of the Florida Constitution that state the election of county and circuit judges "shall be preserved." See art. V, §§ 10(b)(1) & (2), Fla. Const. In fact, after the 1998 revision to the Florida Constitution, which allowed any county to opt out of election in favor of merit retention, not one county opted for this preference. Id.
As this Court stated in Spector , "if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date. Thus the elective process retains that primacy which has historically been accorded to it consistent with the retention of all powers in the people, either directly or through their elected representatives in their Legislature." 305 So.2d at 782.
Clearly there is a problem with the current constitutional provision as interpreted when the decision of whether a judicial vacancy is to be filled by general election or gubernatorial appointment rests solely with the actions of the retiring *906 judge, rather than with the clear directive of the Constitution. As Judge Padovano expounded in his dissent in Trotti:
Finally, I fear that the precedent the court has set here, although well intended, will be abused by those who would manipulate the election process to suit their own political or philosophical objectives. Suppose, for example, that two judges in the same judicial circuit are retiring at the end of their respective terms in office. One of them likes the governor very much and the other strongly opposes the governor. The first judge could bestow the power of an appointment on the governor simply by resigning before the qualifying period but with an effective date the day before the last day of his or her term. In contrast, the second judge could block a gubernatorial appointment simply by notifying members of the local bar that he or she does not intend to stand for re-election. Both judges would have chosen not to seek another term in office, yet one of them would have made the choice appear as though it were resignation before the end of the term.
Trotti [v. Detzner] , 147 So.3d [641,] at 648 [ (Fla 1st DCA 2014) ] (Padovano, J., dissenting).
The personal preferences of individual judges, however well-motivated their intentions, should not be the basis for determining whether a vacancy exists that can either be filled by election or appointment.
Id. at *2 (Pariente, J., concurring in result).
Justice Quince's solution is also consistent with Spector , in which the Court held that the elective process, if available, should be used to fill a vacancy. 305 So.2d at 782. Thus, for the reasons stated by Justice Quince, I would retain jurisdiction, quash the First District Court of Appeal's decision, "and hold that David P. Trotti, who properly qualified for election as circuit judge for the Fourth Judicial Circuit, Group 6, and was elected by virtue of the fact that no other candidate qualified for the seat, is entitled to take the seat that should be filled by election." Dissenting op. at 911 (Quince, J.).
Lastly, although I agree with Justice Quince and would retain jurisdiction to resolve this important constitutional issue, I disagree with the tenor of my colleague's dissent and believe the attack on our fellow justices is unnecessarily harsh and unjustified. See generally dissenting op. (Lewis, J.). This is hardly a situation where, by discharging jurisdiction, the majority "neglects its duty and turns a blind eye to [a] sham." Dissenting op. at 907 (Lewis, J.). Rather, the majority's decision to discharge-which occurs at times after a case has been fully briefed and oral argument heard-simply leaves in place the First District's decision, which concluded that, based on precedent, the judicial vacancy should be filled by appointment rather than election. Scott v. Trotti , 43 Fla. L. Weekly D1691, --- So.3d ----, ----, 2018 WL 3580761, *3 (Fla. 1st DCA July 26, 2018).
Despite the harsh tone, Justice Lewis, in fact, agrees that the judicial vacancy in this case should be filled by appointment. See dissenting op. at 908 (Lewis, J.) ("[T]he Governor properly filled the seat through appointment because the vacancy occurred prior to the qualifying period."). Thus, the difference between the First District's decision and Justice Lewis's dissent is the effective date of resignation. While the solution proposed by Justice Lewis would obviously deter judges from announcing their intention to resign but not actually resigning until months later-as *907 it would force the judge to resign at the time that the resignation is accepted by the governor-it would also create the potential for an extended vacancy.
For the reasons stated, I disagree with the majority's decision to discharge jurisdiction and fully concur in Justice Quince's well-reasoned dissent. I also disagree with Justice Lewis's dissent, both in its unnecessarily harsh tone in criticizing the majority's decision to discharge and his proposed solution for the factual scenario presented.