QUINCE, J., dissenting.
I respectfully dissent from the decision to discharge jurisdiction in this case. Instead, I would retain jurisdiction because the issues before this Court involve the authority of a state officer to take certain actions and the interpretation of the constitutional provisions relating to those actions. These issues are a matter of great public importance. Thus, I would address the issues and quash the decision of the First District Court of Appeal, and hold that David P. Trotti, who properly qualified for election as circuit judge for the Fourth Judicial Circuit, Group 6, and was elected by virtue of the fact that no other candidate qualified for the seat, is entitled to take the seat that should be filled by election.
We laid out the framework for adherence to judicial elections in Spector v. Glisson , 305 So.2d 777 (Fla. 1974), when we said:
We have historically since the earliest days of our statehood resolved as the public policy of this State that interpretations of the constitution, absent clear provision otherwise, should always be resolved in favor of retention in the people of the power and opportunity to select officials of the people's choice, and that vacancies in elective offices should be filled by the people at the earliest practical date.
Id. at 781. We further stated that when there was an intervening election, a judicial vacancy "should be filled by the intervening available elective machinery." Id. at 784. We reasoned that to do otherwise "would frustrate the plain requirements of our constitution." Id. We later concluded "that the constitution mandates an election when there is sufficient time to afford the electorate an opportunity to fill a judicial vacancy." Judicial Nominating Commission, Ninth Circuit v. Graham , (JNC, Ninth Circuit ), 424 So.2d 10, 10 (Fla. 1982). In JNC, Ninth Circuit , we explained our holding in Spector , stating:
[W]e held that if a judicial vacancy is known reasonably in advance of an intervening primary and general election, the vacancy must be filled by election. The holding in Glisson was predicated upon the fact that the constitutional provision was intended to have the election process select members of the judiciary if the electorate had adequate knowledge that a vacancy would occur and that candidates could qualify and run during the regularly scheduled primary and general election process.
JNC, Ninth Circuit , 424 So.2d at 11-12.
Balanced with this principle-that the constitution prefers elections to occur whenever practicable-is the principle that "[v]acancies in office are to be avoided whenever possible." In re Advisory Opinion to the Governor , 600 So.2d 460, 462 (Fla. 1992). We therefore encouraged judges to "submit their resignations, to be effective in the future, at a time that permits the process to proceed in an orderly manner and keep the position filled." Id. Accordingly, we held that Spector "applies to a situation where a sitting judge unequivocally *912 resigns effective at a future date. When a letter of resignation to be effective at a later date is received and accepted by [the Governor], a vacancy in that office occurs and actuates the process to fill it." Id.[3]
In our advisory capacity, we have consistently concluded that the conflict between the sections of the constitution "must be resolved by a construction which gives effect to the clear will of the voters that circuit and county judges be selected by election." Advisory Opinion to the Governor re Appointment or Election of Judges (Appointment or Election of Judges ), 824 So.2d 132, 136 (Fla. 2002). We opined, therefore, "that upon the qualification of a candidate or candidates for a circuit or county judgeship during the statutory qualification period, the election method of selection required by section 10 (b)(1) and (2) takes precedence over and forecloses the Governor's constitutional authority and obligation pursuant to section 11 (b) to fill a vacancy." Id. In so doing, we defined the election process as beginning "when a candidate or candidates have qualified for the circuit or county judgeship." Id. at 135 (citing ch. 2002-17, § 23, Laws of Fla.). We narrowed this ruling to apply only "where a candidate or candidates have already qualified during the statutory qualifications period, one of whom will fill the position by election." Id. at 136.[4]
In other words,
We have interpreted the interplay between article V, section 11(b), and article V, section 10(b), by holding that when a vacancy occurs in the county or circuit courts before the qualifying period for the seat commences, the vacancy should be filled by appointment, but once the election process begins, such a vacancy should be filled by election. Advisory Opinion to Governor re Sheriff & Judicial Vacancies Due to Resignations, 928 So.2d 1218, 1220 (Fla. 2006) ( Sheriff & Judicial Vacancies ); Appointment or Election of Judges 2008, 983 So.2d at 528. In order to promote consistency in the process of filling judicial vacancies, we identified the beginning of the statutory qualifying period as a fixed point to mark the commencement of the election process. Appointment or Election of Judges 2008, 983 So.2d at 529.
Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation , 42 So.3d 795, 797 (Fla. 2010).
As demonstrated, we have previously adopted and repeatedly reaffirmed a bright-line rule that vacancies that occur once the election process begins should be filled by election. Vacancies that occur before the election process begins or after it has completed are filled by gubernatorial appointment. See, e.g. , Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation , 42 So.3d 795, 798 (Fla. 2010) (incumbent resigned after the election process had effectively ended). In so doing, this Court has left an extremely narrow window by which the "clear will of the voters" may be effected and has permitted gamesmanship within the judicial election process that the people surely do not condone. Paraphrasing a previous admonition of this Court, a judgeship is not an office that may be capriciously forsaken *913 at will for personal benefit. See, e.g. , Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation , 42 So.3d 795, 798 (Fla. 2010).
The question really becomes one of when the vacancy in office occurs. The term "vacant" is defined as "empty, unoccupied." Black's Law Dictionary , 1782 (10th ed. 2014). In the case before us, Judge Robert M. Foster tendered his resignation to Governor Scott on April 2, 2018, effective December 31, 2018, for his term expiring January 7, 2019. Judge Foster was ineligible to seek re-election. Governor Scott accepted Judge Foster's resignation on April 23, 2018, seven days before the beginning of the statutory qualifying period for election of circuit court judges. Thus, there would have been a natural vacancy-by expiration of his term-on January 7, 2019. However, having chosen to leave on December 31, 2018, the empty, unoccupied office-the vacancy-will occur on December 31, 2018. Both dates are after the general election that will be held on November 6, 2018. Thus, pursuant to Glisson the position must be filled by an election.[5] An election, in fact, took place when one candidate qualified for the position without opposition.
This is not a case where an unreasonably long vacancy would occur because Judge Foster is not vacating his seat until seven days before his term ends and a new judge could fill his seat. Seven days after December 31 is not an unreasonable delay. Judge Foster and Governor Scott are merely using the legal fiction of a letter sent and acceptance of that letter before the qualifying period, a legal fiction created by this Court, to circumvent the will of the voters. Allowing this practice to continue undermines the credibility of the judicial branch by turning it into a mere political game of hot potato-elections can be avoided by a mere day.
The importance of an independent judicial branch has been oft-repeated.
Arthur Vanderbilt of the New Jersey Supreme Court said it best in 1937 when he said: "If citizens have respect for the work of their [c]ourts, their respect for law will survive the shortcomings of every other branch of government; but, if they lose their respect for the work of the courts, their respect for law and order will vanish with it."
Richard H. Levenstein and Judge Michelle Sisco, Crisis of Knowledge: The Importance of Educating the Public About the Role of Fair and Impartial Courts in Our System of Government , Fla. B. J., May 2016 at 35, 37. The gamesmanship on display here could serve to undermine the voters' respect for the courts. Accordingly, I would hold that, for the purposes of elected judges, a resignation letter accepted during an election year that indicates that the judicial officer will leave on a date after an intervening election, when there is still time for parties to properly qualify for an election, creates a vacancy on the date stated in the letter, not the arbitrary date it is accepted by the Governor. This ruling would reconcile our previous decisions while still permitting retiring or resigning *914 judges flexibility to determine when they should step down. Surely when the people determined that they would prefer to elect certain judges, they did not intend for that desire to be circumvented by artificial vacancies.
Because I would find that Judge Foster's seat should be filled by election and not appointment, I respectfully dissent.
PARIENTE, J., concurs.

It should be noted that none of this applies to judicial vacancies occurring in merit retention. See Mandatory Retirement , 940 So.2d 1090, 1094 (Fla. 2006) ; art. V, § 10(a), Fla. Const.

We distinguished that case from Pincket v. Harris , 765 So.2d 284 (Fla. 1st DCA 2000), because "in Pincket no person had qualified for the election at the time the vacancy occurred because the qualification period had not yet occurred." Appointment or Election of Judges , 824 So.2d at 136 n.9.

We have previously stated, "Under our precedent, a judicial vacancy occurs when a letter of resignation is received and accepted by the Governor." Advisory Opinion to the Governor re Sheriff & Judicial Vacancies Due to Resignations , 928 So.2d 1218, 1220 (Fla. 2006) (citing In re Advisory Opinion to the Governor (Judicial Vacancies) , 600 So.2d 460, 461 (Fla. 1992). I conclude, however, that we have done so to reaffirm the constitutional preference for the election of judges whenever possible. See, e.g., Glisson , 305 So.2d at 784. To the extent the legal fiction we created may be used to circumvent the political process, I would clarify those holdings and place them back into the context in which they were made.