IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DAVID P. TROTTI,

      Appellant,

v.

KEN DETZNER, SECRETARY
OF STATE,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3667

Opinion filed September 17, 2014.

An appeal from the Circuit Court for Leon County.
George S. Reynolds, III, Judge.

David P. Trotti, pro se; Nick James and Christopher W. LoBianco of Hunt, Green
& James, Jacksonville, for Appellant.

J. Andrew Atkinson, General Counsel, Ashley E. Davis and Thomas D. Winokur,
Assistant General Counsels, Tallahassee, for Appellee.

John S. Mills and Andrew D. Manko of The Mills Firm, Tallahassee, for
Intervener, Bruce R. Anderson, Jr.

ROBERTS, J.,

      The appellant, David Trotti, seeks review of an order of the Second Judicial

Circuit in and for Leon County that denied his emergency petition for writ of

mandamus, which sought to compel the appellee Secretary of State (the Secretary)

to accept his qualifying papers for a judicial vacancy in Group 12 of the Fourth Judicial Circuit Court.[1]  On appeal, the appellant argues that the circuit court erred in holding that the judicial seat should be filled by gubernatorial appointment rather than by election.  We disagree and affirm.

The judicial seat at issue here is currently occupied by Circuit Judge Donald R. Moran, Jr.  On March 26, 2014, Judge Moran tendered a letter of resignation to Governor Rick Scott in which he wrote that his resignation was to be "effective the last day of my term in January 2015."  On March 31, 2014, Judge Moran sent a second letter to Governor Scott clarifying that his specific date of resignation was to be Friday, January 2, 2015.  January 2, 2015, is three calendar days (one business day) before Judge Moran's term was due to expire on January 5, 2015. See Art. V. §10(b)(3)b., Fla. Const.; § 100.041(4), Fla. Stat. (2014).

On April 2, 2014, the appellant filed a Form DS-DE 9 with the Division of Elections (the Division) indicating his intention to run for election for the seat at issue.[2]  On April 3, 2014, the Division acknowledged receipt of the appellant's paperwork and placed him on the Division's list of active candidates.  The appellant was listed as a candidate for Group 12 on the Secretary's website on

---

[1] Appellee Bruce Anderson, Jr., intervened in the case below.  His relief requested on appeal is moot in light of our disposition of the case.

[2] Form DS-DE 9 must be filed before a candidate may raise or spend campaign funds, which can occur up to almost two years prior to the qualifying period for the office sought.  § 106.021(1)(a), Fla. Stat. (2014).

April 3, 2014. Although the appellant filed his preliminary paperwork in early April, the statutory qualifying period for the seat was set to begin at noon on April 28, 2014, and end at noon on May 2, 2014. See §§ 105.031(1), 100.061, & 100.032, Fla. Stat. (2014).

On April 10, 2014, Governor Scott sent Judge Moran a letter accepting his resignation. On April 25, 2014, the appellant received an email from the Division informing him that Judge Moran had submitted his resignation and accordingly Group 12 would be fulfilled by gubernatorial appointment rather than election. The Division advised the appellant to withdraw his candidacy or apply for candidacy in a different group.

The appellant filed a petition for mandamus seeking to compel the Secretary to accept his qualifying papers for Group 12 of the Fourth Judicial Circuit.[3] On August 1, 2014, the circuit court entered an order denying the petition. The order found that because Judge Moran resigned prior to the start of the qualifying period and a physical vacancy would occur between the effective date of his resignation and the start of the following term, his seat should be filled by gubernatorial appointment. The court recognized the appellant's reliance on Spector v. Glisson, 305 So. 2d 777 (1974), for the assertion that Florida law generally favors elections.

---

[3] The appellant's petition was originally filed with the Florida Supreme Court, who transferred the petition to the Leon County Circuit Court via order of June 2, 2014.

3

However, the court found that Spector's holding had been limited to a set of facts in which "a judge resigns effective at a future date and *no interim vacancy will exist*" between the effective resignation date and the start of the new term. See Pincket v. Harris, 765 So. 2d 284, 287 (Fla. 1st DCA 2000) (citing In re Advisory Op. to the Gov. (Judicial Vacancies), 600 So. 2d 460, 462 (Fla. 1992)). We affirm the order denying mandamus relief.

"Mandamus may not be used to establish the existence of a right, but only to enforce a right already *clearly and certainly* established in the law." Fla. League of Cities v. Smith, 607 So. 2d 397, 400 (Fla. 1992) (emphasis added). The appellant failed to show that the Secretary had a clear legal duty to accept his qualifying papers and fees and qualify him for Group 12 in the 2014 election as the law is clear that the vacancy created by Judge Moran's resignation must be filled by appointment.

Article V, section 11(b), of the Florida Constitution vests the Governor with the power to fill judicial vacancies via appointment:

> The governor shall fill each vacancy on a circuit court or on a county court, wherein the judges are elected by a majority vote of the electors, by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of office beginning at the end of the appointed term.

4

The Florida Supreme Court has provided that when a vacancy is created prior to the commencement of the qualifying period, the vacancy is required to be filled by gubernatorial appointment. See Advisory Op. to the Gov. re Sheriff & Judicial Vacancies Due to Resignations, 928 So. 2d 1218, 1220-21 (Fla. 2006). Whereas a vacancy that occurs after the election process begins should be filled by election. See Advisory Op. to the Gov. re Judicial Vacancy Due to Resignation, 42 So. 3d 795, 797 (Fla. 2010) ("[W]hen a vacancy occurs in the county or circuit courts before the qualifying period for the seat commences, the vacancy should be filled by appointment, but once the election process begins, such vacancy should be filled by election.").

Thus, the salient question to answer here is when the vacancy occurred in relation to the election process. A judicial vacancy occurs when a letter of resignation is received and accepted by the Governor, even if the resignation, as here, has a future effective date. See In re Advisory Op. to the Gov. (Judicial Vacancies), 600 So. 2d 460, 462 (Fla. 1992) ("When a letter of resignation to be effective at a later date is received and accepted [by the Governor], a vacancy in that office occurs and actuates the process to fill it."). See also Sheriff & Judicial Vacancies, 928 So. 2d at 1220; Spector, 305 So. 2d at 780. Thus, when Governor Scott accepted Judge Moran's resignation on April 10, 2014, the vacancy occurred.

"In order to promote consistency in the process of filling judicial vacancies,

5

we identified the beginning of the statutory qualifying period as a fixed point to mark the commencement of the election process." Advisory Op. to Gov. re Judicial Vacancy Due to Resignation, 42 So. 3d at 797. Here, the statutory qualifying period was due to commence at noon on April 28, 2014, 18 days after the vacancy occurred. As the vacancy occurred before the qualifying period commenced, the Secretary could not conduct a qualifying period because the vacancy had to be filled by appointment. See Sheriff & Judicial Vacancies, 928 So. 2d at 1220-21.

The appellant argues that underlying policy considerations should lead to an interpretation favoring election unless the resulting vacancy is "unreasonable." He argues that the vacancy here – one business day or three calendar days – is not so unreasonable as to require an appointment. In support he relies on Spector, 305 So. 2d at 784. In Spector, an incumbent judge resigned effective at the end of his term, midnight on the last day, the qualifying period and election were available after the resignation letter, and there was no emergency or public business requiring an immediate appointment. Id. The Florida Supreme Court held that the seat should be filled by election, recognizing that Florida law generally favors the elective process:

> Interim appointments need only be made when there is no earlier, reasonably intervening elective process available. As between the appointive power on the one hand and the power of the people to elect on the other, the policy of the law is to afford the people priority, if

6

> reasonably possible . . . if such policy is to be modified, let the people speak.

Id.

In Pincket v. Harris, this Court recognized that Spector had been limited to "situations in which a judge resigns effective at a future date and no interim vacancy will exist." 765 So. 2d at 287 (citing In re Advisory Op. to the Gov., 600 So. 2d at 462)). The appellant argues that Pincket relied on dicta from In re Advisory Opinion to the Governor and that the spirit of the law should be read to mean if a circuit court judge resigns prior to the qualifying period his seat shall be filled by appointment unless his resignation is for a future date and no *unreasonable* vacancy will occur

We reject the appellant's arguments inviting an analysis of the reasonableness of the vacancy, which, as pointed out by the Secretary, would be arbitrary and cannot constitute a duty that can be compelled by mandamus. Deciding the election versus appointment question on the duration of the vacancy created rather than on the interplay between the vacancy and the commencement of the election process would result in inconsistent and confusing precedent. Cf. Advisory Opinion to the Governor re Appointment or Election of Judges, 983 So. 2d 526, 530 (Fla. 2008) ("The determination of constitutional provisions should not vary based upon fluctuations of the individual 'election process' for a given year."). Of further note, Advisory Opinion to the Governor re Appointment or

7

Election of Judges answered the question of whether a judicial seat vacated by an involuntary retirement during the qualifying period should be filled by appointment, which would result in a vacancy of no more than 30 to 60 days, or by election, which would leave the seat unoccupied for more than eight months. Id. at 527-28. The Florida Supreme Court held that because the vacancy occurred during the qualifying period, the vacancy was to be filled by election. Id. at 529. The supreme court focused on the fact that the election process had commenced without regard for the void that would occur in the office. Id.

Here, the vacancy created by Judge Moran's resignation occurred before the qualifying period, and a physical vacancy will occur during his term such that the vacancy must be filled by gubernatorial appointment. While the dissent may eschew a bright-line test, we cannot engage in a determination of what does or does not constitute an unreasonable vacancy warranting an appointment. If we were to interpret the case law as the dissent suggests and find that an election was required here when the election process had not yet begun, we would be nullifying the Governor's power of appointment in Article V, section 11(b), of the Constitution in post-election process resignations and pre-election process resignations. Stated otherwise, we would be allowing the limited exception created by Spector to swallow Article V, section 11(b), of the Constitution.

The circuit court appropriately denied the petition for writ of mandamus

8

because there is no clear right to qualify for candidacy for a seat that is required to be filled by gubernatorial appointment.

AFFIRMED.

SWANSON, J., CONCURS; PADOVANO, J., DISSENTS WITH OPINION.

PADOVANO, J., dissenting.

The majority has concluded that a judicial vacancy created by a resignation tendered before the qualifying period for a general election but with an effective date one day before the end of the judge's term must be filled by a gubernatorial appointment. With respect for my colleagues in the majority, I believe that this decision is contrary to the applicable case law and the controlling provisions of the Florida Constitution. Moreover, I believe that the precedent the court has set here is one that will have a high potential for abuse. The effect of the court's decision is to bestow upon an individual judge the power to block an election by resigning just short of the end of his or her term in office. I do not think this decision is required as a matter of law, nor do I think that it is wise. For these reasons, I dissent.

The rationale of the majority's decision is that an appointment is required because the resignation at issue was accepted before the start of the qualifying period. On this point, I believe that majority has misconstrued the requirements of Article X, section 3 and Article V, section 11(b) of the Florida Constitution. The fallacy of the majority's reasoning is that it fails to account for the fact that the resignation was to take place at a distant point in the future. I acknowledge that the Governor would have had a right under these constitutional provisions to appoint Judge Moran's successor had the resignation become effective immediately or even if it had been scheduled to take place several months after the date of the

10

resignation letter, as it ordinarily the case. But the problem here is that Judge Moran continues to occupy the office even to this day. His resignation was to take effect approximately eight months after the date of his resignation letter. The qualifying period for the 2014 general election occurred in the interim, and the election itself will have taken place in the interim.

It is true that the existence of a vacancy as defined in Article X, section 3 could trigger the need for a gubernatorial appointment, but that is not necessarily the case if the vacancy is created by a resignation that is to take place in the future. The Supreme Court's decision in Spector v. Glisson, 305 So. 2d 777 (Fla. 1974) serves as a good example. In that case, a justice who was ineligible to run for another term in office sent a letter of resignation to the governor prior to the start of the qualifying period for the next general election. The resignation was to take effect at midnight on the last day of the incumbent justice's term. A lawyer attempted to qualify for election to the office during the qualifying period, but the secretary of state refused to accept his qualifying papers, concluding that the seat was to be filled by an appointment. The lawyer then filed a petition for writ of mandamus seeking to compel the secretary to accept his qualifying papers. The Supreme Court granted the petition and directed that the seat be filled by an election.

The resignation in the Spector case did not create a right on the part of the governor to fill the vacancy by an appointment, because there was an intervening qualifying period and an intervening general election. The Supreme Court made it clear that the appointment process is to be used only when necessary to fill a seat that will be unoccupied. As the court stated, "the only excuse for the appointment of any officer made elective under the law is founded on the emergency of the public business." Id. at 781 (citations omitted). The court expanded on this theme by stating in no uncertain terms that there is a strong preference for elections in Florida:

> We feel that it necessarily follows from this consistent view and steadfast public policy of this State as expressed above, that if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date. Thus the elective process retains that primacy which has historically been accorded to it consistent with the retention of all powers in the people, either directly or through their elected representatives in their Legislature, which are not delegated, and also consistent with the priority of the elective process over appointive powers except where explicitly otherwise provided. We thereby continue the basic premise of our democratic form of government, that it is a 'government of the people, by the people and for the people.'

Id. at 782. Because judges are elected in Florida and because the vacancy at issue could have been filled by a candidate elected by the people in a general election, the court concluded that the governor was not entitled to make an appointment.

12

The only difference between this case and the <u>Spector</u> case is that the effective date of the resignation in this case was one day before the end of the term and not on the last day. The question we should be asking ourselves is whether this is the kind of difference that should compel an exception to the rule in <u>Spector</u>. I think that it is not. In both cases, the judges communicated an intention not to run for another term. The fact that one of them planned to leave office a day early is not, in my view, a valid reason to reach a different result. Thus, I believe that the majority has misapplied the <u>Spector</u> decision by relying on a distinction without a difference.

The majority contends that the <u>Spector</u> decision is not controlling here because it is limited to situations in which there will be no actual vacancy in the office. However, I think it is incorrect to say that any actual vacancy, regardless of its duration, triggers an exception to the rule in <u>Spector</u>. The cases the majority of this court relies on are all distinguishable in that they involve situations in which an appointment was necessary to avoid a substantial period in which the office would remain unoccupied.

For example, in <u>Advisory Opinion to the Governor</u>, 600 So. 2d 460 (Fla. 1992) the judge sent a letter to the governor in March resigning effective the following July. That case differs substantially from <u>Spector</u> and this case, in that the office would have remained unoccupied for five months, irrespective of the

13

intervening election. The same is true of all of the other cases. See Advisory Opinion to the Governor re Sheriff & Judicial Vacancies Due to Resignations, 928 So. 2d 1218 (Fla. 2006) (the judge resigned in April effective the following May, thus leaving the office unoccupied for seven months, regardless of the scheduled election that year); Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation, 42 So. 3d 795 (Fla. 2010) (the resignation created an actual vacancy of seven months); Pincket v. Harris, 765 So. 2d 284 (Fla. 1st DCA 2000) (the judge resigned on June 19th effective the next day, leaving an actual vacancy in the office for a period of six months).

The common feature of the cases is that they all involve situations in which the courts distinguished the holding in Spector, for the purpose of solving a problem: to avoid a lengthy gap in judicial service. But there is no such problem in this case. Here, as in Spector, there is no reason why the seat could not be filled by an election. Judge Moran resigned before the start of the qualifying period for the 2014 general election, and the effective date of his resignation is after the date of the election itself. The rationale of the Spector decision, that elective offices should be filled by elections whenever that is possible, is as compelling in this case as it was forty years ago when the decision was made.

The majority has concluded that the duration of the actual vacancy is immaterial, but in my view that is incorrect. Although there are cases holding that

14

an actual vacancy of six months requires an appointment, as I have pointed out, it does not follow from the principle established in these cases that an actual vacancy of one day requires an appointment. I am not aware of any case that stands for the proposition that any actual vacancy, no matter how brief it may be, requires an appointment. And I am confident that there is no authority for the proposition that the rights of voters can be overcome by a manufactured vacancy like the one we have before us in this case.

The reason given by the majority for holding that the duration of the actual vacancy is immaterial is that the task of deciding whether the vacancy in a particular case is too long or too short would lead to arbitrary results. There is some merit to that point, but I think that judges are well-equipped to make decisions like those – one could argue that is precisely what we are here to do – and that there is a greater danger in following an inflexible rule, no matter how unfair the result may be, simply for the sake of following the rule. I think it would be far better to apply judgment and reason to resolve the issue on the facts presented in the case.

Finally, I fear that the precedent the court has set here, although well intended, will be abused by those who would manipulate the election process to suit their own political or philosophical objectives. Suppose, for example, that two judges in the same judicial circuit are retiring at the end of their respective terms in

office.  One of them likes the governor very much and the other strongly opposes the governor.  The first judge could bestow the power of an appointment on the governor simply by resigning before the qualifying period but with an effective date the day before the last day of his or her term.  In contrast, the second judge could block a gubernatorial appointment simply by notifying members of the local bar that he or she does not intend to stand for re-election.  Both judges would have chosen not to seek another term in office, yet one of them would have made the choice appear as though it were resignation before the end of the term.  I see no reason why the court should allow the election process to be circumvented in this way.

For these reasons, I respectfully dissent.