983 So.2d 526 (2008)
ADVISORY OPINION TO the GOVERNOR RE APPOINTMENT OR ELECTION OF JUDGES.
No. SC08-844.
Supreme Court of Florida.
May 19, 2008.
Jason Brent Gonzalez, General Counsel, Office of the Governor, Tallahassee, FL, for The Honorable Charles J. Crist, Jr., Governor of Florida.
Ronald G. Meyer and Janeia R. Daniels of Meyer and Brooks, P.A., Tallahassee, FL, on behalf of Nina Ashenafi Richardson; Robert A. Harper, III of Harper and Harper Law Firm, P.A., Tallahassee, FL, on behalf of Sean Desmond; and Robert Rivas and Jessica Slatten of Sachs and Sax, P.A., Tallahassee, FL, and Richard M. Benham of the Law Office of Richard Benham, P.A., Tallahassee, FL, on behalf of Ion Sancho, Supervisor of Elections of Leon County; Jose Bias Lorenzo, Jr., Ph. D., Chair, Judicial Nominating Commission for the Second Judicial Circuit, Tallahassee, FL, for Interested parties.
 The Honorable Charlie Crist
 Governor, State of Florida
 The Capitol
 Tallahassee, Florida 32399
Dear Governor Crist:
*527 By letter dated May 5, 2008, you requested our opinion on a question of constitutional interpretation involving your executive powers and duties with regard to a judicial vacancy in the Leon County Court. This request and our response are pursuant to article IV, section (1)(c) of the Florida Constitution.[1]
Your letter provided as follows:
This question has arisen in the context of the recent vacancy in Leon County Court Seat 5. Seat 5 was previously scheduled for election in the 2008 general election cycle with the qualifying period scheduled to commence at noon, Monday April 28, 2008, and continue through noon, Friday, May 2, 2008. On April 30, 2008, the Court entered an order declaring incumbent Judge Timothy D. Harley to be involuntarily retired from judicial service effective midnight on the date of the order.
In an advisory opinion issued in 2002, the Justices of the Court opined that circuit and county court vacancies are filled by gubernatorial appointment, unless the vacancy occurs after the "election process" begins, which the Justices found to be "when a candidate or candidates have qualified for the circuit or county judgeship." In re Advisory Opinion to Governor re: Appointment or Election of Judges, 824 So.2d 132, 135 (Fla.2002). According to the Leon County Supervisor of Elections (the "Supervisor"), at the time the Leon County Court vacancy occurred at midnight, April 30, 2008, no candidate or candidates had qualified for the judgeship. After receiving that information, and in accordance with the Court's 2002 advisory opinion to the Governor, my General Counsel notified the Judicial Nominating Commission for the Second Judicial Circuit (the "JNC") of the vacancy and constitutional requirement that the JNC submit a list of nominees to the Governor within thirty days from the date of the vacancy. On May 1, 2008, the INC advertised the vacancy and application deadline.
On May 1, 2008 my legal counsel contacted the Leon County Supervisor of Elections, and informed him that the JNC had been notified of the vacancy and commenced the judicial nominating process. The Supervisor informed my counsel that he was aware of the vacancy to be filled by gubernatorial appointment and that he intended to refuse to accept qualifying papers from individuals attempting to qualify on May 1, 2008. On Friday, May 2, 2008, the Supervisor contacted my legal counsel and informed him that, upon further review, the Supervisor had reversed his position and determined that, despite commencement of the JNC process, he had a ministerial duty to accept qualifying papers and fees. On the morning of May 2, 2008, prior to the noon qualifying deadline, the Supervisor also affirmatively advised three candidates of his reversal and qualified these candidates for Leon County Court, Seat 5, all of whom the Supervisor had refused to qualify on May 1, 2008. Consequently, both the appointment and election processes are now underway to fill the same vacancy.
. . . In order to minimize hardship on the Leon County Court, I intend to fill *528 the vacancy in June 2008, resulting in a vacancy of no more than 30 to 60 days. By contrast, if the vacancy were to be filled by election, Seat 5 would be unoccupied for more than eight months from May 1, 2008 until January 6, 2009.
. . . .
. . . I respectfully request an opinion of the Justices of the Supreme Court as to whether the Governor's constitutional obligation under article V, section 11(b), Florida Constitution, to fill a vacancy on a circuit or county court by appointment continues until a candidate or candidates have qualified for the office, irrespective of whether the statutory qualifying period has commenced.
Letter from Governor Charlie Crist to Chief Justice R. Fred Lewis dated May 5, 2008, at 1-4. On May 6, 2008, this Court issued an order permitting all interested parties to file briefs on an expedited basis.[2]

ANALYSIS
The instant inquiry arises because the Florida Constitution contains two conflicting provisions with regard to the filling of judicial vacancies. Article V, section 11(b) governing judicial vacancies provides that "the governor shall fill each vacancy on a circuit court or on a county court, wherein the judges are elected by a majority vote of the electors, by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission." Conversely, the portion of article V that addresses judicial elections specifically provides that the election of circuit and county court judges "shall be preserved." Art. V, § 10(b)(1)-(2), Fla. Const. When this Court previously addressed whether a vacancy caused by the involuntary retirement of a judge was to be filled by election or appointment, we explained:
Article V, section 10(b)(3) required a referendum in the year 2000 to be placed before the voters in each of Florida's twenty judicial circuits and sixty-seven counties concerning the method of selection of circuit and county judgeships. See generally Kainen v. Harris, 769 So.2d 1029 (Fla.2000). A majority of the voters within the territorial jurisdiction of each judicial circuit court and county court voted to retain the election of those judges instead of replacing the elective system with a merit-selection system for those courts. . . .
. . .
In view of this conflict between sections of the constitution, we conclude that the conflict must be resolved by a construction which gives effect to the clear will of the voters that circuit and county judges be selected by election.

Advisory Opinion to Governor re Appointment or Election of Judges, 824 So.2d 132, 135-36 (Fla.2002) (emphasis supplied); see also Judicial Nominating Comm'n, Ninth Circuit v. Graham, 424 So.2d 10, 10 (Fla. 1982) ("[T]he constitution mandates an election when there is sufficient time to afford the electorate an opportunity to fill a judicial vacancy." (emphasis supplied)). Accordingly, we have previously held that once the "election process begins," a vacancy in the county or circuit court is to be filled by election. Appointment or Election of Judges, 824 So.2d at 136 (emphasis supplied).
The issue the Court faces in the instant matter is when the "election process" began for Leon County Court Seat 5. See id. *529 In Appointment or Election of Judges, this Court stated that the election process had begun when a candidate or candidates had qualified for the circuit or county judgeship. See id. at 135. In the 2006 opinion Advisory Opinion to Governor re Sheriff & Judicial Vacancies Due To Resignations, 928 So.2d 1218, 1221 (Fla.2006), this Court stated that "establishing the statutory qualifying period as the start of the election process is consistent with our precedent." (Emphasis supplied.) The 2002 and 2006 advisory opinions arose from distinctly different factual circumstances. In Appointment or Election of Judges, a judge was involuntarily retired after the qualifying period had ended and after three candidates had already qualified to run for that judicial position. See 824 So.2d at 133-34. Conversely, in Sheriff & Judicial Vacancies, the qualifying period had not yet commenced, and, accordingly, no individual had qualified for the judicial office at the time the vacancy occurred. See 928 So.2d at 1219.
In the instant case, the involuntary retirement of Judge Harley and the vacancy occurred after the commencement of the qualifying period and after conduct by the candidates who sought to qualify had begun. See Inquiry Concerning a Judge v. Timothy David Harley, No. SC08-685, 2008 WL 1930815 (Fla. Apr.30, 2008) (unpublished order) (approving stipulation and declaring Judge Harley to be involuntarily retired as of midnight, April 30, 2008); § 105.031, Fla. Stat. (2007) ("Candidates for judicial office shall qualify no earlier than noon of the 120th day, and no later than noon of the 116th day, before the primary election."); 2008 County Election Information Sheet, available at http:// www.leoncountyfl.gov/elect/?page= CandidatesändReports/2008FilingAnd Qualifying.asp (qualifying dates for 2008 county court judge positions are from 12 p.m. on April 28, 2008, until 12 p.m. on May 2, 2008).[3] Accordingly, the question we address is whether the "election process" had already begun where this involuntary retirement occurred in the middle of the statutory qualifying period.
Upon our review of prior advisory opinions which address whether a judicial vacancy is to be filled by election or appointment, we determine that our 2006 opinion provides the answer to your inquiryour precedent establishes "the statutory qualifying period as the start of the election process." Sheriff & Judicial Vacancies, 928 So.2d at 1221. Pursuant to the Florida Statutes, the 2008 "election process" for Leon County Court Seat 5 commenced at noon on April 28, 2008 and terminated at noon on May 2, 2008. See § 105.031, Fla. Stat. (2007). Judge Harley was not involuntarily retired and the vacancy did not occur until April 30, 2008during the qualifying periodand therefore, the vacancy created by his retirement is to be filled by election. Our two prior cases related to this issue addressed a vacancy before the qualifying period had begun and a vacancy after the qualifying period had terminated. This case addresses a vacancy during a qualifying period. Applying *530 our opinions in both Appointment or Election of Judges and Sheriff & Judicial Vacancies, we hold under the facts presented in this case that a vacancy which occurs during a qualifying period in which any candidate qualifies for the judicial office is to be filled by election.
In Appointment or Election of Judges, this Court expressly stated that our determination was "limited to the circumstances described in [the Governor's] letter, i.e., where a candidate or candidates have already qualified during the statutory qualifications period, one of whom will fill the position by election." See 824 So.2d at 136. We therefore addressed those specific facts. The instant matter presents different facts from those we addressed in Sheriff & Judicial Vacancies, but our basic holding defining the "election process" remains consistent and is dispositive in our decision today.
A set date for commencement of the "election process" provides a definitive time period and a practical answer to the election-versus-appointment conundrum with regard to defining an "election process." The establishment of a fluctuating date based upon some variable factor such as when potential candidates take specific actions toward qualifying for candidacy, or when the first candidate qualifies, would inject uncertainty into defining the "election process." If we were to conclude that the process begins upon the occurrence of one of these variable factors, new facts could arise during every election year, and this Court would routinely be called upon to determine the precise commencement of any particular "election process." The determination of constitutional provisions should not vary based upon fluctuations of the individual "election process" for a given year.[4] Instead, a fixed date for defining the "election process"one which is derived from Florida statutory law-ensures that the will of the people that circuit and county court judges be elected is preserved. See Appointment or Election of Judges, 824 So.2d at 136 (conflicting constitutional provisions that address judicial vacancies "must be resolved by a construction which gives effect to the clear will of the voters that circuit and county judges be selected by election").

CONCLUSION
Accordingly, we answer your question with regard to the judicial vacancy created by the involuntary retirement of Judge Timothy Harley by stating it is our opinion that the vacancy is to be filled by election.
Respectfully,
/s/ R. Fred Lewis
R. Fred Lewis
/s/ Charles T. Wells
Charles T. Wells
/s/ Harry Lee Anstead
Harry Lee Anstead
/s/ Barbara J. Pariente
Barbara J. Pariente
/s/ Peggy A. Quince
Peggy A. Quince
/s/ Raoul G. Cantero, III
Raoul G. Cantero, III
/s/ Kenneth B. Bell
Kenneth B. Bell
NOTES
[1] Article IV, section (1)(c) provides in full:

The governor may request in writing the opinion of the justices of the supreme court as to the interpretation of any portion of this constitution upon any question affecting the governor's executive powers and duties. The justices shall, subject to their rules of procedure, permit interested persons to be heard on the questions presented and shall render their written opinion not earlier than ten days from the filing and docketing of the request, unless in their judgment the delay would cause public injury.
[2] Briefs were filed by the Supervisor of Elections of Leon County, Ion Sancho, and by candidates Nina Ashenafi Richardson and Sean Desmond.
[3] The information submitted to this Court indicates that each of four candidates made steps to qualify as a judicial candidate prior to the involuntary retirement of Judge Harley. Some candidates acted much earlier than others. One of the qualifying candidates and the incumbent candidate acted in February 2008, well in advance of the statutory qualifying period. In March 2008, both of these candidates submitted to the Supervisor of Elections a number of signed elector petitions which would allow them to qualify their candidacies without the payment a filing fee. Moreover, by the time Judge Harley became involuntarily retired and the vacancy occurred, all candidates had filed the required "Statement of Candidate" and the "Appointment of Campaign Treasurer and Designation of Campaign Depository for Candidates," required by the Florida Statutes.
[4] Indeed, in our 2006 decision Sheriff & Judicial Vacancies, we noted that several individuals had already stated their intent to run for the judgeship, and at least one individual had actively pursued qualification prior to the commencement of the qualification period. See 928 So.2d at 1220. Despite the actions taken by these individuals, we nonetheless concluded that the election process began on the date when the statutory qualification period commenced. See id. at 1220-21.