# Supreme Court of Florida

————————

No. SC18-1217

————————

**DAVID P. TROTTI,**
Petitioner,

vs.

**RICK SCOTT, GOVERNOR, et al.,**
Respondents.

November 26, 2018

PER CURIAM.

We originally accepted jurisdiction to review *Scott v. Trotti*, 43 Fla. L. Weekly D1691 (Fla. 1st DCA July 26, 2018), pursuant to article V, section 3(b)(3) of the Florida Constitution.  After further consideration, we conclude that jurisdiction was improvidently granted.  Accordingly, we hereby discharge jurisdiction and dismiss this review proceeding.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., dissents with an opinion.
LEWIS, J., dissents with an opinion.
QUINCE, J., dissents with an opinion, in which PARIENTE, J., concurs.

NO MOTION FOR REHEARING WILL BE ALLOWED.

PARIENTE, J., dissenting.

I fully concur with Justice Quince's dissenting opinion, which proposes a reasonable solution to this constitutional conundrum that would prevent judges who favor merit retention in lieu of election from manipulating the system, ensure that judicial vacancies do not exist for an extended period of time, and is consistent with this Court's precedent in *Spector v. Glisson*, 305 So. 2d 777 (Fla. 1974). *See* dissenting op. at 15-16 (Quince, J.). We should not condone this practice of judges announcing their resignation before the beginning of an election qualifying period but not resigning until days before the end of their term, which has occurred since 2016, regardless of whether they prefer merit selection over election. This Court should seize the opportunity to end this practice by holding, as Justice Quince explains, that the vacancy in this case should be filled by election. Thus, I disagree with the majority's decision to discharge.

In my view, the solution set forth in Justice Quince's dissent ensures that trial court vacancies are filled, wherever possible, by election. *See* dissenting op. at 20-21 (Quince, J.). This solution is consistent with my previous opinion in *Pincket v. Detzner*, No. 16-768, 2016 WL 3127704 (Fla. June 3, 2016), where I explained:

> Although individual judges may prefer the merit selection system for all judges rather than contested elections, no individual judge should be able to circumvent the intent of the provisions of the Florida Constitution that state the election of county and circuit judges

"shall be preserved." *See* art. V, §§ 10(b)(1) & (2), Fla. Const. In fact, after the 1998 revision to the Florida Constitution, which allowed any county to opt out of election in favor of merit retention, not one county opted for this preference. *Id.*

As this Court stated in *Spector*, "if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date. Thus the elective process retains that primacy which has historically been accorded to it consistent with the retention of all powers in the people, either directly or through their elected representatives in their Legislature." 305 So. 2d at 782.

Clearly there is a problem with the current constitutional provision as interpreted when the decision of whether a judicial vacancy is to be filled by general election or gubernatorial appointment rests solely with the actions of the retiring judge, rather than with the clear directive of the Constitution. As Judge Padovano expounded in his dissent in *Trotti:*

> Finally, I fear that the precedent the court has set here, although well intended, will be abused by those who would manipulate the election process to suit their own political or philosophical objectives. Suppose, for example, that two judges in the same judicial circuit are retiring at the end of their respective terms in office. One of them likes the governor very much and the other strongly opposes the governor. The first judge could bestow the power of an appointment on the governor simply by resigning before the qualifying period but with an effective date the day before the last day of his or her term. In contrast, the second judge could block a gubernatorial appointment simply by notifying members of the local bar that he or she does not intend to stand for re-election. Both judges would have chosen not to seek another term in office, yet one of them would have made the choice appear as though it were resignation before the end of the term.

*Trotti*, 147 So. 3d at 648 (Padovano, J., dissenting).

The personal preferences of individual judges, however well-motivated their intentions, should not be the basis for determining whether a vacancy exists that can either be filled by election or appointment.

*Id.* at *2 (Pariente, J., concurring in result).

Justice Quince's solution is also consistent with *Spector*, in which the Court held that the elective process, if available, should be used to fill a vacancy. 305 So. 2d at 782. Thus, for the reasons stated by Justice Quince, I would retain jurisdiction, quash the First District Court of Appeal's decision, "and hold that David P. Trotti, who properly qualified for election as circuit judge for the Fourth Judicial Circuit, Group 6, and was elected by virtue of the fact that no other candidate qualified for the seat, is entitled to take the seat that should be filled by election." Dissenting op. at 15-16 (Quince, J.).

Lastly, although I agree with Justice Quince and would retain jurisdiction to resolve this important constitutional issue, I disagree with the tenor of my colleague's dissent and believe the attack on our fellow justices is unnecessarily harsh and unjustified. *See generally* dissenting op. (Lewis, J.). This is hardly a situation where, by discharging jurisdiction, the majority "neglects its duty and turns a blind eye to [a] sham." Dissenting op. at 6 (Lewis, J.). Rather, the majority's decision to discharge—which occurs at times after a case has been fully briefed and oral argument heard—simply leaves in place the First District's decision, which concluded that, based on precedent, the judicial vacancy should be

- 4 -

filled by appointment rather than election. *Scott v. Trotti*, 43 Fla. L. Weekly D1691, 2018 WL 3580761, *3 (Fla. 1st DCA July 26, 2018).

Despite the harsh tone, Justice Lewis, in fact, agrees that the judicial vacancy in this case should be filled by appointment. *See* dissenting op. at 9 (Lewis, J.) ("[T]he Governor properly filled the seat through appointment because the vacancy occurred prior to the qualifying period."). Thus, the difference between the First District's decision and Justice Lewis's dissent is the effective date of resignation. While the solution proposed by Justice Lewis would obviously deter judges from announcing their intention to resign but not actually resigning until months later—as it would force the judge to resign at the time that the resignation is accepted by the governor—it would also create the potential for an extended vacancy.

For the reasons stated, I disagree with the majority's decision to discharge jurisdiction and fully concur in Justice Quince's well-reasoned dissent. I also disagree with Justice Lewis's dissent, both in its unnecessarily harsh tone in criticizing the majority's decision to discharge and his proposed solution for the factual scenario presented.

LEWIS, J., dissenting.

Travesty, n, (1674): "a debased, distorted, or grossly inferior imitation <a ~ of justice>." *Merriam-Webster's Collegiate Dictionary* 1257 (10th ed. 1999).

This accurately describes the circumstances in this case, which allow judges to make a mockery of our Florida Constitution with impunity. The issue is whether a judge can prospectively resign during an election year to manufacture a vacancy that will be filled by gubernatorial appointment instead of a regularly scheduled election. Rather than addressing this direct affront to our constitutional system of checks and balances, the Court neglects its duty and turns a blind eye to this sham. To understand this grave disregard for the rule of law, it is necessary to set out the details not included in the Court's three-sentence discharge opinion.

Vacancies in circuit and county court judicial offices "occur upon the . . . resignation of the incumbent." Art. X, § 3, Fla. Const. When vacancies occur in circuit and county courts (collectively trial courts), the Constitution provides that a governor must make appointments to fill the seats. Art. V, § 11(b), Fla. Const. Importantly, however, the people of Florida have specifically enshrined their right to elect circuit and county court judges (collectively trial court judges). Art. V, § 10(b)(1)-(2), Fla. Const. Moreover, voters unanimously rejected the replacement of trial court elections with a system of appointment and merit retention.[1]

---

1. In 2000, every Florida county and judicial circuit voted on this issue, art. V, § 10(b)(3), Fla. Const., and each voted against trial court merit retention, *Pincket v. Detzner*, No. SC16-768, 2016 WL 3127704, at *2 (Fla. June 3, 2016) (Pariente, J., concurring in result); *see also* Fla. Dep't of State, Div. of Elections, Official Results from 2000 General Election,

Accordingly, there is a tension between the relevant constitutional provisions with regard to vacancies that occur during an election year in judicial seats scheduled to be filled by election. *Advisory Op. to the Governor re Appointment or Election of Judges* (*Appointment or Election I*), 824 So. 2d 132, 136 (Fla. 2002).

The Constitution is silent as to whether election or appointment applies to these seats. *Advisory Op. to the Governor re Sheriff & Judicial Vacancies Due to Resignations* (*Sheriff & Judicial Vacancies*), 928 So. 2d 1218, 1220-21 (Fla. 2006). Through various advisory opinions, we rectified this discord by drawing a firm line at the qualifying period as the moment when appointment gives way to election for the purpose of filling vacancies. *Appointment or Election I*, 824 So. 2d at 136; *see, e.g.*, *Advisory Op. to the Governor re Judicial Vacancy Due to Resignation* (*Vacancy Due to Resignation*), 42 So. 3d 795, 797 (Fla. 2010); *Advisory Op. to the Governor re Appointment or Election of Judges* (*Appointment or Election II*), 983 So. 2d 526, 528-29 (Fla. 2008); *Sheriff & Judicial Vacancies*, 928 So. 2d at 1220. Pursuant to precedent, the Court does not look at when the actual vacancy will occur; rather, it merely determines if the constitutional vacancy occurred prior to the qualifying period. *See Appointment or Election II*, 983 So. 2d at 529-30; *Sheriff & Judicial Vacancies*, 928 So. 2d at 1220-21. Vacancies

---

https://results.elections.myflorida.com/Index.asp?ElectionDate=11/7/2000&DAT MODE= (last visited Nov. 21, 2018).

occurring prior to the qualifying period are filled by appointment. *Vacancy Due to Resignation*, 42 So. 3d at 797. A constitutional vacancy occurs upon submission of the resignation to the governor and his or her acceptance thereof. *E.g.*, *In re Advisory Op. to the Governor* (*1992 Advisory Opinion*), 600 So. 2d 460, 462 (Fla. 1992).[2]

This procedure is not perfect, *Sheriff & Judicial Vacancies*, 928 So. 2d at 1220-21, and it would be preferable for the people to respond with a constitutional amendment to clarify their preferences in these circumstances, *see Pincket*, 2016 WL 3127704, at *2 (Pariente, J., concurring in result). Yet it is our system, and it strikes a reasonable balance between a governor's power to appoint and the people's right to elect. For the third straight election cycle, however, trial court judges are manipulating this constitutional process by resigning prior to the qualifying period—more than eight months before the end of their terms—while unilaterally setting their retirement effective date far in the future and a matter of days before they are required to leave office. This practice is clever albeit

---

2. Although the Court repeatedly cites this point of law, it likely cannot completely withstand the scrutiny of review. In *Smith v. Brantley*, 400 So. 2d 443 (Fla. 1981), this Court held that gubernatorial acceptance of a judicial resignation is not necessary to render it effective. *Id.* at 448-49. We specifically rejected the argument there that section 114.01(1)(d), Florida Statutes (1977)—which required gubernatorial acceptance—controlled over the plain language of the Constitution. *Id.*

disgraceful because, despite the voter's clear preference for electing trial court judges, this Court has made clear that it will watch indifferently as judges employ this end around to the plain constitutional language.

Under the Court's precedent, specifically *Sheriff & Judicial Vacancies*, the answer to the election or appointment question here is quite simple: the Governor properly filled the seat through appointment because the vacancy occurred prior to the qualifying period. *See* 928 So. 2d at 1220-21. However, that conclusion is not dispositive on the issue of when the resignation becomes effective. Since the establishment of this Court in 1846, there is not a single opinion that stands for the proposition that trial court judges, or any other public officers, can unilaterally determine the manner of selecting their successors by tendering a delayed resignation to take effect almost a year in the future. Rather, this Court has specifically noted that the "Constitution still does not define or fix the effective date of a resignation." *Brantley*, 400 So. 2d at 447. Regardless, in *Brantley*, the Court established that it has the power to qualify or limit a public official's right to relinquish office if necessary to protect the public. *Id.* Given the repetitive nature of this problem and the clear harm that it causes to the public every two years, we should discharge our constitutional obligation and put an end to this shameful practice. In line with the Court's precedent, it is obvious that the qualifying period should act as the cutoff for when a resignation becomes effective along with

determining which manner of filling the vacancy applies. *See Appointment or Election II*, 983 So. 2d at 529-30; *Sheriff & Judicial Vacancies*, 928 So. 2d at 1220-21. If the qualifying period cutoff is to mean anything, then the Court must enforce that date as the cutoff for all purposes.

Tellingly, the Constitution does not draw the distinction that we lawyers have created between actual and constitutional vacancies. The Constitution says that a vacancy occurs "upon the . . . resignation of the incumbent." Art. X, § 3, Fla. Const. Through the years, we have interpreted that language to mean that prospective resignations create present constitutional vacancies. *E.g.*, *Spector v. Glisson*, 305 So. 2d 777, 780 (Fla. 1974). Yet outside of these insulated and occasionally academic courthouse walls, a vacancy in office cannot occur at two separate points in time. A vacant office is an unoccupied office. *See Black's Law Dictionary*, *Vacancy* (10th ed. 2014) ("[A vacancy is t]he quality, state, or condition of being unoccupied, esp. in reference to an office."). So, absent additional constitutional guidance to allow this type of gamesmanship, the resignation must create the vacancy now or create the vacancy later; but it cannot create two vacancies for the purpose of thwarting an election. Therefore, it is our jurisprudential wordplay, rather than the plain language of the Constitution, which has enabled this practice to proceed unabated.

Make no mistake, there is absolutely nothing in the Constitution, Florida Statutes, or the decisional law of this State that grants trial court judges the right to delay their resignation by eight months. We have consistently interpreted article X, section 3 to mean that trial court vacancies occur upon acceptance of a resignation by the governor. *E.g.*, *1992 Advisory Opinion*, 600 So. 2d at 462. Additionally, we have noted that the "Constitution still does not define or fix the effective date of a resignation." *Brantley*, 400 So. 2d at 447. Without any additional guidance from the constitutional plain language, it is self-evident that both the constitutional and actual vacancies must occur simultaneously in these cases. The effect of these manufactured vacancies is to deprive the people of an election; therefore, it is an absolute travesty for this Court to allow these judges to remain in office for essentially the remainder of their term. The only way for the Court to rein in this practice is to set a firm date that coordinates the relevant constitutional provisions—article V, sections 10(b)(1)-(2) and 11(b)—with the dates between the actual and constitutional vacancies. Those dates should be one and the same. To hold otherwise, the Court must subscribe to the fantasy that a vacancy both occurs upon the resignation, but is also delayed until the officer decides to leave office. For at least the better part of three centuries, it has been part of western society's collective conscience that people cannot have their cake and eat it too. *See* Jonathan Swift, *Polite Conversation* 112 (George Saintsbury

ed., Chiswick Press 1892) (1738).  But the Court today rejects that common-sense rationale, subscribing instead to the legal fiction that constitutional and actual vacancy dates may be as far apart as any particular judge desires.

In my view, the Constitution prohibits judges from circumventing it, requiring them to protect and defend that bedrock document instead of frustrating its purpose.  *See* art. II, § 5(b), Fla. Const. (requiring every state officer to swear to "support, protect, and defend the Constitution and Government of the United States and of the State of Florida").  Although our jurisprudence holds that the replacement to this seat must be appointed, nothing in the Constitution or this Court's precedent suggests in any way that outgoing judges can set the effective dates of their resignations eight months in the future and mere days before leaving office.  This practice is a brazen attempt to accomplish that which is otherwise prohibited: judges cannot unilaterally dictate the constitutional process for filling vacancies in the seats that they are vacating.  Here, however, that is precisely occurring, and it is accomplished through the use of a fake, false, and otherwise hollow resignation date by setting the occurrence of the actual vacancy a matter of days before the regularly scheduled end of the term.  These judicial officers should not be permitted to retain the benefits of office while at the same time creating a constitutional vacancy that forecloses an election.  If judges would like to resign early, then they should actually resign and leave office.  By allowing these judges

to remain on the bench, the Court effectively allows its own qualifying period cutoff to be rendered nugatory—subject to the whims of individual judges in election years. *Cf. Appointment or Election II*, 983 So. 2d at 530 ("The determination of constitutional provisions should not vary based upon fluctuations of the individual 'election process' for a given year."). Moreover, as a practical matter, we are not only allowing judges to steal elections from their neighbors, but now we are giving them paychecks for the trouble.

The Governor argues that these prospective resignations are necessary for continuity on the bench and the administration of justice because a resignation effective immediately would leave the seat vacant for up to four months. *See* art. V, § 11(c), Fla. Const. However, the existence of an actual vacancy in a particular seat is a red herring in this discussion for several reasons. First, there are hundreds of senior judges across this State who are available for temporary assignment while a governor makes an appointment to a vacant trial court seat. *See* art. V, § 2(b), Fla. Const. (empowering the chief justice of this Court to assign senior judges to any court). Thus, any effect on the administration of justice can be easily ameliorated. Second, it is the judges manufacturing these vacancies, not the constitutional process, that creates any problem which actual vacancies may present. Unlike merit retention seats, where judges and justices can retire early in order to allow the appointment process to commence prior to the end of a term,

- 13 -

there is no justification for trial court judges to retire early. The terms of trial court judges end on a set date, and their successors take office the following day, ensuring a smooth transition. However, because these judges have set out to manufacture vacancies, the offices will actually be vacant for a few days. Finally, the occurrence of the actual vacancy is not dispositive in this Court's analysis. We have consistently held for two decades that it is the qualifying period that controls regardless of whether a lengthy physical vacancy will result. *E.g.*, *Appointment or Election I*, 824 So. 2d at 133, 136. Accordingly, there is no rationale to support these types of prospective resignations.

Certain jurists, including myself, may agree that merit retention is superior to elections as a method for selecting judges. However, under our constitutional system, *the people* chose to elect their trial court judges. It is a basic tenet of our constitutional system that this Court should respect that decision. As we must always remember,

> Ours is a government of, by and for the people. Our federal and state constitutions guarantee the right of the people to take an active part in the process of that government, which for most of our citizens means participation via the election process. The right to vote is the right to participate; it is also the right to speak, but more importantly the right to be heard. We must tread carefully on that right or we risk the unnecessary and unjustified muting of the public voice.

- 14 -

*Boardman v. Esteva*, 323 So. 2d 259, 263 (Fla. 1975). Instead of treading carefully to effectuate the intent of the voters by applying its own precedent in a commonsense fashion, this Court now decides to stick its head in the sand.

Alas, here we are in bizarro world: where a vacancy both exists and does not yet exist; where we ignore the fact that an election could and should occur due to a legal fiction not found in our Constitution. As a society, we call upon judges to protect and uphold our Constitution. In my view, the people cannot be confident that these judges will properly enforce the text of a document that they so willingly scorned. Although we cannot prevent judges from sullying their robes as they walk out the door, we can at least ensure that they leave office immediately.

Accordingly, I dissent.

QUINCE, J., dissenting.

I respectfully dissent from the decision to discharge jurisdiction in this case. Instead, I would retain jurisdiction because the issues before this Court involve the authority of a state officer to take certain actions and the interpretation of the constitutional provisions relating to those actions. These issues are a matter of great public importance. Thus, I would address the issues and quash the decision of the First District Court of Appeal, and hold that David P. Trotti, who properly qualified for election as circuit judge for the Fourth Judicial Circuit, Group 6, and

was elected by virtue of the fact that no other candidate qualified for the seat, is entitled to take the seat that should be filled by election.

We laid out the framework for adherence to judicial elections in *Spector v. Glisson*, 305 So. 2d 777 (Fla. 1974), when we said:

> We have historically since the earliest days of our statehood resolved as the public policy of this State that interpretations of the constitution, absent clear provision otherwise, should always be resolved in favor of retention in the people of the power and opportunity to select officials of the people's choice, and that vacancies in elective offices should be filled by the people at the earliest practical date.

*Id.* at 781. We further stated that when there was an intervening election, a judicial vacancy "should be filled by the intervening available elective machinery." *Id.* at 784. We reasoned that to do otherwise "would frustrate the plain requirements of our constitution." *Id.* We later concluded "that the constitution mandates an election when there is sufficient time to afford the electorate an opportunity to fill a judicial vacancy." *Judicial Nominating Commission, Ninth Circuit v. Graham*, (*JNC, Ninth Circuit*), 424 So. 2d 10, 10 (Fla. 1982). In *JNC, Ninth Circuit*, we explained our holding in *Spector*, stating:

> [W]e held that if a judicial vacancy is known reasonably in advance of an intervening primary and general election, the vacancy must be filled by election. The holding in *Glisson* was predicated upon the fact that the constitutional provision was intended to have the election process select members of the judiciary if the electorate had adequate knowledge that a vacancy would occur and that candidates could qualify and run during the regularly scheduled primary and general election process.

- 16 -

*JNC, Ninth Circuit*, 424 So. 2d at 11-12.

Balanced with this principle—that the constitution prefers elections to occur whenever practicable—is the principle that "[v]acancies in office are to be avoided whenever possible." *In re Advisory Opinion to the Governor*, 600 So. 2d 460, 462 (Fla. 1992). We therefore encouraged judges to "submit their resignations, to be effective in the future, at a time that permits the process to proceed in an orderly manner and keep the position filled." *Id.* Accordingly, we held that *Spector* "applies to a situation where a sitting judge unequivocally resigns effective at a future date. When a letter of resignation to be effective at a later date is received and accepted by [the Governor], a vacancy in that office occurs and actuates the process to fill it." *Id.*[3]

In our advisory capacity, we have consistently concluded that the conflict between the sections of the constitution "must be resolved by a construction which gives effect to the clear will of the voters that circuit and county judges be selected by election." *Advisory Opinion to the Governor re Appointment or Election of Judges* (*Appointment or Election of Judges*), 824 So. 2d 132, 136 (Fla. 2002). We opined, therefore, "that upon the qualification of a candidate or candidates for a

_____

3. It should be noted that none of this applies to judicial vacancies occurring in merit retention. *See Mandatory Retirement*, 940 So. 2d at 1094; art. V, § 10(a), Fla. Const.

circuit or county judgeship during the statutory qualification period, the election method of selection required by section 10(b)(1) and (2) takes precedence over and forecloses the Governor's constitutional authority and obligation pursuant to section 11(b) to fill a vacancy." *Id.* In so doing, we defined the election process as beginning "when a candidate or candidates have qualified for the circuit or county judgeship." *Id.* at 135 (citing ch. 2002-17, § 23, Laws of Fla.). We narrowed this ruling to apply only "where a candidate or candidates have already qualified during the statutory qualifications period, one of whom will fill the position by election." *Id.* at 136.[4]

In other words,

> We have interpreted the interplay between article V, section 11(b), and article V, section 10(b), by holding that when a vacancy occurs in the county or circuit courts before the qualifying period for the seat commences, the vacancy should be filled by appointment, but once the election process begins, such a vacancy should be filled by election. *Advisory Opinion to Governor re Sheriff & Judicial Vacancies Due to Resignations,* 928 So. 2d 1218, 1220 (Fla. 2006) (*Sheriff & Judicial Vacancies* ); *Appointment or Election of Judges 2008,* 983 So. 2d at 528. In order to promote consistency in the process of filling judicial vacancies, we identified the beginning of the statutory qualifying period as a fixed point to mark the commencement of the election process. *Appointment or Election of Judges 2008,* 983 So. 2d at 529.

---

4. We distinguished that case from *Pincket v. Harris*, 765 So. 2d 284 (Fla. 1st DCA 2000), because "in *Pincket* no person had qualified for the election at the time the vacancy occurred because the qualification period had not yet occurred." *Appointment or Election of Judges*, 824 So. 2d at 136 n.9.

*Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation*, 42 So. 3d 795, 797 (Fla. 2010).

As demonstrated, we have previously adopted and repeatedly reaffirmed a bright-line rule that vacancies that occur once the election process begins should be filled by election.  Vacancies that occur before the election process begins or after it has completed are filled by gubernatorial appointment.  *See, e.g.*, *Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation*, 42 So. 3d 795, 798 (Fla. 2010) (incumbent resigned after the election process had effectively ended). In so doing, this Court has left an extremely narrow window by which the "clear will of the voters" may be effected and has permitted gamesmanship within the judicial election process that the people surely do not condone.  Paraphrasing a previous admonition of this Court, a judgeship is not an office that may be capriciously forsaken at will for personal benefit.  *See, e.g.*, *Advisory Opinion to the Governor re Judicial Vacancy Due to Resignation*, 42 So. 3d 795, 798 (Fla. 2010).

The question really becomes one of when the vacancy in office occurs.  The term "vacant" is defined as "empty, unoccupied."  *Black's Law Dictionary*, 1782 (10th ed. 2014).  In the case before us, Judge Robert M. Foster tendered his resignation to Governor Scott on April 2, 2018, effective December 31, 2018, for his term expiring January 7, 2019.  Judge Foster was ineligible to seek re-election.

Governor Scott accepted Judge Foster's resignation on April 23, 2018, seven days before the beginning of the statutory qualifying period for election of circuit court judges. Thus, there would have been a natural vacancy—by expiration of his term—on January 7, 2019. However, having chosen to leave on December 31, 2018, the empty, unoccupied office—the vacancy—will occur on December 31, 2018. Both dates are after the general election that will be held on November 6, 2018. Thus, pursuant to *Glisson* the position must be filled by an election. [5] An election, in fact, took place when one candidate qualified for the position without opposition.

This is not a case where an unreasonably long vacancy would occur because Judge Foster is not vacating his seat until seven days before his term ends and a new judge could fill his seat. Seven days after December 31 is not an unreasonable delay. Judge Foster and Governor Scott are merely using the legal fiction of a letter sent and acceptance of that letter before the qualifying period, a legal fiction

---

5. We have previously stated, "Under our precedent, a judicial vacancy occurs when a letter of resignation is received and accepted by the Governor." *Advisory Opinion to the Governor re Sheriff & Judicial Vacancies Due to Resignation*, 928 So. 2d 1218, 1220 (Fla. 2006) (citing *In re Advisory Opinion to the Governor (Judicial Vacancies)*, 600 So. 2d 460, 461 (Fla. 1992). I conclude, however, that we have done so to reaffirm the constitutional preference for the election of judges whenever possible. *See, e.g., Glisson*, 305 So. 2d at 784. To the extent the legal fiction we created may be used to circumvent the political process, I would clarify those holdings and place them back into the context in which they were made.

created by this Court, to circumvent the will of the voters. Allowing this practice to continue undermines the credibility of the judicial branch by turning it into a mere political game of hot potato—elections can be avoided by a mere day.

The importance of an independent judicial branch has been oft-repeated.

> Arthur Vanderbilt of the New Jersey Supreme Court said it best in 1937 when he said: "If citizens have respect for the work of their [c]ourts, their respect for law will survive the shortcomings of every other branch of government; but, if they lose their respect for the work of the courts, their respect for law and order will vanish with it."

Richard H. Levenstein and Judge Michelle Sisco, *Crisis of Knowledge: The Importance of Educating the Public About the Role of Fair and Impartial Courts in Our System of Government*, Fla. B. J., May 2016 at 35, 37. The gamesmanship on display here could serve to undermine the voters' respect for the courts. Accordingly, I would hold that, for the purposes of elected judges, a resignation letter accepted during an election year that indicates that the judicial officer will leave on a date after an intervening election, when there is still time for parties to properly qualify for an election, creates a vacancy on the date stated in the letter, not the arbitrary date it is accepted by the Governor. This ruling would reconcile our previous decisions while still permitting retiring or resigning judges flexibility to determine when they should step down. Surely when the people determined that they would prefer to elect certain judges, they did not intend for that desire to be circumvented by artificial vacancies.

Because I would find that Judge Foster's seat should be filled by election and not appointment, I respectfully dissent.

PARIENTE, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction/Class of Constitutional Officers

First District - Case No. 1D18-2387

(Leon County)

Philip J. Padovano and Joseph T. Eagleton of Brannock & Humphries, P.A., Tampa, Florida; Robert J. Slama of Robert J. Slama, P.A., Jacksonville, Florida; and David P. Trotti of David P. Trotti, P.A., Jacksonville, Florida,

for Petitioner

Daniel E. Nordby, General Counsel, Meredith L. Sasso, Chief Deputy General Counsel, John MacIver, Nicholas A. Primrose, and Alexis Lambert, Deputy General Counsel, Executive Office of the Governor, Tallahassee, Florida; and Bradley R. McVay, General Counsel, Ashley E. Davis, Deputy General Counsel, and Jesse Dyer, Assistant General Counsel, Florida Department of State, Tallahassee, Florida,

for Respondents