LEWIS, J., dissenting.
Travesty, n, (1674): "a debased, distorted, or grossly inferior imitation < a ~ of justice>." Merriam-Webster's Collegiate Dictionary 1257 (10th ed. 1999). This accurately describes the circumstances in this case, which allow judges to make a mockery of our Florida Constitution with impunity. The issue is whether a judge can prospectively resign during an election year to manufacture a vacancy that will be filled by gubernatorial appointment instead of a regularly scheduled election. Rather than addressing this direct affront to our constitutional system of checks and balances, the Court neglects its duty and turns a blind eye to this sham. To understand this grave disregard for the rule of law, it is necessary to set out the details not included in the Court's three-sentence discharge opinion.
Vacancies in circuit and county court judicial offices "occur upon the ... resignation of the incumbent." Art. X, § 3, Fla. Const. When vacancies occur in circuit and county courts (collectively trial courts), the Constitution provides that a governor must make appointments to fill the seats. Art. V, § 11(b), Fla. Const. Importantly, however, the people of Florida have specifically enshrined their right to elect circuit and county court judges (collectively trial court judges). Art. V, § 10(b)(1)-(2), Fla. Const. Moreover, voters unanimously rejected the replacement of trial court elections with a system of appointment and merit retention.[1] Accordingly, there is a tension between the relevant constitutional provisions with regard to vacancies that occur during an election year in judicial seats scheduled to be filled by election. Advisory Op. to the Governor re Appointment or Election of Judges (Appointment or Election I ), 824 So.2d 132, 136 (Fla. 2002).
The Constitution is silent as to whether election or appointment applies to these seats. Advisory Op. to the Governor re Sheriff & Judicial Vacancies Due to Resignations (Sheriff & Judicial Vacancies ), 928 So.2d 1218, 1220-21 (Fla. 2006). Through various advisory opinions, we rectified this discord by drawing a firm line at the qualifying period as the moment when appointment gives way to election for the purpose of filling vacancies. Appointment or Election I , 824 So.2d at 136 ; see, e.g. , Advisory Op. to the Governor re Judicial Vacancy Due to Resignation (Vacancy Due to Resignation ), 42 So.3d 795, 797 (Fla. 2010) ; Advisory Op. to the Governor re Appointment or Election of Judges (Appointment or Election II ), 983 So.2d 526, 528-29 (Fla. 2008) ; Sheriff & Judicial Vacancies , 928 So.2d at 1220. Pursuant to precedent, the Court does not look at when the actual vacancy will occur; rather, it merely determines if the constitutional vacancy *908 occurred prior to the qualifying period. See Appointment or Election II , 983 So.2d at 529-30 ; Sheriff & Judicial Vacancies , 928 So.2d at 1220-21. Vacancies occurring prior to the qualifying period are filled by appointment. Vacancy Due to Resignation , 42 So.3d at 797. A constitutional vacancy occurs upon submission of the resignation to the governor and his or her acceptance thereof. E.g. , In re Advisory Op. to the Governor (1992 Advisory Opinion ), 600 So.2d 460, 462 (Fla. 1992).[2]
This procedure is not perfect, Sheriff & Judicial Vacancies , 928 So.2d at 1220-21, and it would be preferable for the people to respond with a constitutional amendment to clarify their preferences in these circumstances, see Pincket , 2016 WL 3127704, at *2 (Pariente, J., concurring in result). Yet it is our system, and it strikes a reasonable balance between a governor's power to appoint and the people's right to elect. For the third straight election cycle, however, trial court judges are manipulating this constitutional process by resigning prior to the qualifying period-more than eight months before the end of their terms-while unilaterally setting their retirement effective date far in the future and a matter of days before they are required to leave office. This practice is clever albeit disgraceful because, despite the voter's clear preference for electing trial court judges, this Court has made clear that it will watch indifferently as judges employ this end around to the plain constitutional language.
Under the Court's precedent, specifically Sheriff & Judicial Vacancies , the answer to the election or appointment question here is quite simple: the Governor properly filled the seat through appointment because the vacancy occurred prior to the qualifying period. See 928 So.2d at 1220-21. However, that conclusion is not dispositive on the issue of when the resignation becomes effective. Since the establishment of this Court in 1846, there is not a single opinion that stands for the proposition that trial court judges, or any other public officers, can unilaterally determine the manner of selecting their successors by tendering a delayed resignation to take effect almost a year in the future. Rather, this Court has specifically noted that the "Constitution still does not define or fix the effective date of a resignation." Brantley , 400 So.2d at 447. Regardless, in Brantley , the Court established that it has the power to qualify or limit a public official's right to relinquish office if necessary to protect the public. Id. Given the repetitive nature of this problem and the clear harm that it causes to the public every two years, we should discharge our constitutional obligation and put an end to this shameful practice. In line with the Court's precedent, it is obvious that the qualifying period should act as the cutoff for when a resignation becomes effective along with determining which manner of filling the vacancy applies. See Appointment or Election II , 983 So.2d at 529-30 ; Sheriff & Judicial Vacancies , 928 So.2d at 1220-21. If the qualifying period cutoff is to mean anything, then the Court must enforce that date as the cutoff for all purposes.
Tellingly, the Constitution does not draw the distinction that we lawyers have created between actual and constitutional vacancies. The Constitution says that a vacancy *909 occurs "upon the ... resignation of the incumbent." Art. X, § 3, Fla. Const. Through the years, we have interpreted that language to mean that prospective resignations create present constitutional vacancies. E.g. , Spector v. Glisson , 305 So.2d 777, 780 (Fla. 1974). Yet outside of these insulated and occasionally academic courthouse walls, a vacancy in office cannot occur at two separate points in time. A vacant office is an unoccupied office. See Black's Law Dictionary , Vacancy (10th ed. 2014) ("[A vacancy is t]he quality, state, or condition of being unoccupied, esp. in reference to an office."). So, absent additional constitutional guidance to allow this type of gamesmanship, the resignation must create the vacancy now or create the vacancy later; but it cannot create two vacancies for the purpose of thwarting an election. Therefore, it is our jurisprudential wordplay, rather than the plain language of the Constitution, which has enabled this practice to proceed unabated.
Make no mistake, there is absolutely nothing in the Constitution, Florida Statutes, or the decisional law of this State that grants trial court judges the right to delay their resignation by eight months. We have consistently interpreted article X, section 3 to mean that trial court vacancies occur upon acceptance of a resignation by the governor. E.g. , 1992 Advisory Opinion , 600 So.2d at 462. Additionally, we have noted that the "Constitution still does not define or fix the effective date of a resignation." Brantley , 400 So.2d at 447. Without any additional guidance from the constitutional plain language, it is self-evident that both the constitutional and actual vacancies must occur simultaneously in these cases. The effect of these manufactured vacancies is to deprive the people of an election; therefore, it is an absolute travesty for this Court to allow these judges to remain in office for essentially the remainder of their term. The only way for the Court to rein in this practice is to set a firm date that coordinates the relevant constitutional provisions- article V, sections 10(b)(1) -(2) and 11(b)-with the dates between the actual and constitutional vacancies. Those dates should be one and the same. To hold otherwise, the Court must subscribe to the fantasy that a vacancy both occurs upon the resignation, but is also delayed until the officer decides to leave office. For at least the better part of three centuries, it has been part of western society's collective conscience that people cannot have their cake and eat it too. See Jonathan Swift, Polite Conversation 112 (George Saintsbury ed., Chiswick Press 1892) (1738). But the Court today rejects that common-sense rationale, subscribing instead to the legal fiction that constitutional and actual vacancy dates may be as far apart as any particular judge desires.
In my view, the Constitution prohibits judges from circumventing it, requiring them to protect and defend that bedrock document instead of frustrating its purpose. See art. II, § 5(b), Fla. Const. (requiring every state officer to swear to "support, protect, and defend the Constitution and Government of the United States and of the State of Florida"). Although our jurisprudence holds that the replacement to this seat must be appointed, nothing in the Constitution or this Court's precedent suggests in any way that outgoing judges can set the effective dates of their resignations eight months in the future and mere days before leaving office. This practice is a brazen attempt to accomplish that which is otherwise prohibited: judges cannot unilaterally dictate the constitutional process for filling vacancies in the seats that they are vacating. Here, however, that is precisely occurring, and it is accomplished through the use of a fake, false, and otherwise hollow resignation date by setting the *910 occurrence of the actual vacancy a matter of days before the regularly scheduled end of the term. These judicial officers should not be permitted to retain the benefits of office while at the same time creating a constitutional vacancy that forecloses an election. If judges would like to resign early, then they should actually resign and leave office. By allowing these judges to remain on the bench, the Court effectively allows its own qualifying period cutoff to be rendered nugatory-subject to the whims of individual judges in election years. Cf. Appointment or Election II , 983 So.2d at 530 ("The determination of constitutional provisions should not vary based upon fluctuations of the individual 'election process' for a given year."). Moreover, as a practical matter, we are not only allowing judges to steal elections from their neighbors, but now we are giving them paychecks for the trouble.
The Governor argues that these prospective resignations are necessary for continuity on the bench and the administration of justice because a resignation effective immediately would leave the seat vacant for up to four months. See art. V, § 11(c), Fla. Const. However, the existence of an actual vacancy in a particular seat is a red herring in this discussion for several reasons. First, there are hundreds of senior judges across this State who are available for temporary assignment while a governor makes an appointment to a vacant trial court seat. See art. V, § 2(b), Fla. Const. (empowering the chief justice of this Court to assign senior judges to any court). Thus, any effect on the administration of justice can be easily ameliorated. Second, it is the judges manufacturing these vacancies, not the constitutional process, that creates any problem which actual vacancies may present. Unlike merit retention seats, where judges and justices can retire early in order to allow the appointment process to commence prior to the end of a term, there is no justification for trial court judges to retire early. The terms of trial court judges end on a set date, and their successors take office the following day, ensuring a smooth transition. However, because these judges have set out to manufacture vacancies, the offices will actually be vacant for a few days. Finally, the occurrence of the actual vacancy is not dispositive in this Court's analysis. We have consistently held for two decades that it is the qualifying period that controls regardless of whether a lengthy physical vacancy will result. E.g. , Appointment or Election I , 824 So.2d at 133, 136. Accordingly, there is no rationale to support these types of prospective resignations.
Certain jurists, including myself, may agree that merit retention is superior to elections as a method for selecting judges. However, under our constitutional system, the people chose to elect their trial court judges. It is a basic tenet of our constitutional system that this Court should respect that decision. As we must always remember,
Ours is a government of, by and for the people. Our federal and state constitutions guarantee the right of the people to take an active part in the process of that government, which for most of our citizens means participation via the election process. The right to vote is the right to participate; it is also the right to speak, but more importantly the right to be heard. We must tread carefully on that right or we risk the unnecessary and unjustified muting of the public voice.
Boardman v. Esteva , 323 So.2d 259, 263 (Fla. 1975). Instead of treading carefully to effectuate the intent of the voters by applying its own precedent in a commonsense fashion, this Court now decides to stick its head in the sand.
*911 Alas, here we are in bizarro world: where a vacancy both exists and does not yet exist; where we ignore the fact that an election could and should occur due to a legal fiction not found in our Constitution. As a society, we call upon judges to protect and uphold our Constitution. In my view, the people cannot be confident that these judges will properly enforce the text of a document that they so willingly scorned. Although we cannot prevent judges from sullying their robes as they walk out the door, we can at least ensure that they leave office immediately.
Accordingly, I dissent.

In 2000, every Florida county and judicial circuit voted on this issue, art. V, § 10(b)(3), Fla. Const., and each voted against trial court merit retention, Pincket v. Detzner , No. SC16-768, 2016 WL 3127704, at *2 (Fla. June 3, 2016) (Pariente, J., concurring in result); see also Fla. Dep't of State, Div. of Elections, Official Results from 2000 General Election, https://results.elections.myflorida.com/Index.asp?ElectionDate=11/7/2000&DATMODE= (last visited Nov. 21, 2018).

Although the Court repeatedly cites this point of law, it likely cannot completely withstand the scrutiny of review. In Smith v. Brantley , 400 So.2d 443 (Fla. 1981), this Court held that gubernatorial acceptance of a judicial resignation is not necessary to render it effective. Id. at 448-49. We specifically rejected the argument there that section 114.01(1)(d), Florida Statutes (1977)-which required gubernatorial acceptance-controlled over the plain language of the Constitution. Id.